STATE of Missouri,
Plaintiff-Respondent,

v.

Steve E. McMAHAN and Michael Roy McMahan, Defendants-Appellants.

No. 10659.

Missouri Court of Appeals,
Southern District,
Division One.

May 3, 1979.

Motion for Rehearing or to Transfer
Denied June 15, 1979.

Richard D. Bender, Springfield, for defendants-appellants.

John D. Ashcroft, Atty. Gen., Carson W. Elliff, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

WELDON W. MOORE, Special Judge.

Defendants Steve E. McMahan and Michael Roy McMahan were convicted in a jury-waived trial of burglary and stealing. Each defendant was sentenced to five years on each charge, the sentences as to each defendant were to run concurrently. The only question raised on this appeal is the propriety of the ruling of the trial court denying defendants' motion to suppress the use of certain evidence that was in an automobile and statements made by defendants.

During the evening of February 7, 1977, or the early morning of February 8, 1977, Herrman Lumber Company of Springfield, Missouri was burglarized. Among the items taken were a money bag, a black faced true temper sledge hammer and a pry bar.

In Conway, Arkansas, at about 11:30 p. m. on February 8, 1977, Sergeant Clark of the police department of that city was leaving the police parking lot by a narrow private drive. At that time he saw a 1966 GTO Pontiac begin a left turn into the private drive. The GTO swerved to the right to avoid a collision with his patrol car. The sergeant got behind the GTO, turned on the blue lights of the police car and stopped the GTO for erratic driving. The GTO was occupied by the two defendants, one of whom presented a drivers license at the request of the officer. No tickets were issued or charges made for erratic driving. The officer requested the defendants to

step out of the car, which they did. At that time the officer saw a little jug of souvenir "corn whiskey" in the inside of the car. The whiskey did not contain an Arkansas liquor tax stamp. There is dispute as to whether the jug of whiskey was in "plain view" as claimed by the officer or in a sack containing other souvenirs from Silver Dollar City near Branson, Missouri, as claimed by defendants. The officer asked if there was any more whiskey in the car and was told there was not. The officer asked Steve McMahan if he could take a look and was told to "look anywhere you want to."

Officer Clark was joined by fellow officer Bradley, who was in civilian clothes. Officer Clark asked Steve if he would mind opening the trunk and he said "no" and walked around and opened the trunk. Officer Clark observed exhibits numbers 1 and 2, which were a true temper sledge hammer and a pry bar. Officer Bradley obtained a money bag later marked exhibit number 3, from the glove compartment of the car. After he saw these "burglary tools" in the trunk, officer Clark arrested both defendants for possession of untaxed liquor.

Defendants were taken to the police station prior to 1:30 a. m.

Detective Helton of the Conway Police Department arrived at the police station about midnight or a little later. After he arrived the *Miranda* warning was given to each defendant and each defendant signed written Miranda waiver forms. Defendant Steve McMahan, after signing a written Miranda waiver form, signed a consent to search form. Detective Helton and Sergeant Clark searched the Pontiac GTO and removed a sledge hammer, a pry bar, a pair of leather gloves and a knife from it. The officers returned to the police station and arrested defendants on a charge of criminal attempt (apparently a charge similar to a charge of possession of burglary tools). It was learned that each defendant had multiple felony convictions and each had served prison sentences and each defendant had been convicted of burglary. An investigation was launched to determine if some crime had been committed that involved the defendants. This investigation included the search of a Little Rock motel room with consent of defendant Michael Roy McMahan. A Morriltown, Arkansas robbery was investigated. The motel search was fruitless and defendants were not connected to the Morriltown robbery.

During the time the defendants were in custody they were questioned principally by detective Helton. Defendant Michael Roy McMahan said one of the officers said something to him that made him mad and "I told them to just take me back to my cell because I didn't have nothing to say to them. I wasn't going to tell them anything." "Q: And did he take you back to your cell? A: Yes, sir, a short time later."

Defendant Steve McMahan testified that one of the officers yelled at him and "I just told him I don't have anything to say . . and they took me and locked me back up."

Defendant Steve McMahan advised the officer that he was in need of medical care and he was taken from the jail to the emergency room of the hospital where he saw a doctor, was examined or treated, and was given a prescription. He also requested and was granted permission to stop at a service station and buy cigarettes.

At approximately 3–4 p. m. on February 9, 1977, detective Helton returned to the Conway police station and learned of the burglary of Herrman Lumber Company at Springfield, Missouri. Detective Helton then confronted defendant Michael McMahan with this fact and this defendant indicated he wanted to talk to his brother before discussing the matter. The defendants were permitted to confer between themselves. Thereafter, detective Helton took written statements from defendants Michael McMahan and Steven McMahan, state's exhibits "7" and "9" respectively, which involved them in the Herrman Lumber Company burglary.

Defendants were returned to Greene County, Missouri, and charged with burglary and stealing. They waived the right to jury trial. A motion to suppress was heard and overruled and the court allowed both physical evidence of the crime seized from

the car and the statements given to the officer by the defendants in evidence and both were found guilty of burglary and stealing.

The issue presented is whether the discovery of the items in the Pontiac GTO and the statements of the defendants constituted an unreasonable search and seizure within the ambit of the United States and Missouri Constitutions.

■ In this court-tried case, deference is given to the findings of the trial judge on credibility of witnesses and resolution of conflicts in testimony. *State v. Rose*, 535 S.W.2d 115 (Mo.App.1976). Rules 73.-01(3)(b) and 28.18.

■ Through the due process clause of the Fourteenth Amendment the prohibition of the Fourth Amendment against unreasonable searches and seizures applies to the states. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Witherspoon*, 460 S.W.2d 281, 283–284 (Mo.1970). It is well established that a search conducted incidental to a lawful arrest or with consent of the person is constitutionally permissible. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) and *State v. Virdure*, 371 S.W.2d 196 (Mo.1963). Here the search was without a warrant and the burden is on the state to show that search comes within one of a few established exceptions to the Fourth Amendment requirement. Consent must be freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Consent must be voluntary, unequivocal and free from coercion, either express or implied. *State v. Witherspoon*, 460 S.W.2d at 289.

■ The courts have not laid down a hard and fast rule by which it can be concluded there was or was not consent. Determination of consent involves many factors including but not limited to whether or not threats were made by the officers, the number of officers present, the degree to which the officers emphasized their authority, whether or not weapons were displayed, was there fraud or misleading on the part of the officers, what the person consenting said or did and the experience and education of the consentee. See discussion in 9 A.L.R.3d 858.

■ Sergeant Clark had a right to stop the GTO Pontiac because of erratic driving. Defendants consented to the search of the vehicle at that time. Reviewing the factors and the search here, we agree with the trial court that the consent to search was voluntary as orally given and as given in writing. At the scene where the car was stopped only two officers were present, one of whom was not in uniform, the officers displayed no weapons, the officers did not overemphasize their authority and defendants were not mislead nor was fraud practiced against them. Defendants told the officer, "look anywhere you want to," and opened the trunk with keys he had in his possession. The written consent to search by defendant Steve McMahan was signed by him after he had been arrested and given the *Miranda* warning. There was no prolonged questioning or threats involved. After the written consent the officers took the keys and opened the car and trunk themselves and seized articles in the car. The items seized were properly admitted.

■ Next we consider the contention of the defendants that the court erred in overruling the motion to suppress and receiving in evidence the written statements of defendants which involved them in the Herrman Lumber Company burglary. They maintain that the statements were not voluntary and were the fruit of an invalid arrest in violation of constitutional rights. They rely on the fruit of the poisonous tree doctrine of *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Assuming arguendo that there was no valid arrest of defendants, that alone would not exclude their statements. Courts have been requested to invoke a "but for" test which might compel the exclusion of all statements following an illegal arrest but they have refused to do so in *State v. Olds*, 569 S.W.2d 745 (Mo.1978), *Wong Sun v. United States*, supra, and *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

In *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), the court considered the admissibility of confessions and at 81 S.Ct. 1879 the court stated:

"The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 [1961]. The line of distinction is that at which governing self-direction is lost and compulsion of whatever nature or however infused propels or helps to propel the confession."

The Due Process Clause does not mandate that the police forego all questioning, nor that they be given carte blanche to extract what they can from a suspect. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In *Wong Sun v. United States,* 83 S.Ct. at 417 the court said:

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

In *Brown v. Illinois* the court stated that the question of whether the confession is a product of free will must be answered on the facts of the individual case and no single fact is dispositive.

*Culombe, Schneckloth* and *Brown,* all supra, considered such factors as the temporal proximity of the arrest and confession, whether or not *Miranda* warnings were given, purpose and flagrancy of official misconduct, whether the confession was obtained by incommunicado interrogation in an environment created for no purpose other than to subjugate the individual to the will of his examiner, the duration of the interrogation, whether or not the accused is allowed to communicate with the outside world, the attitude of the police toward him, his physical and mental state, the age of the accused, his education, his intelligence and physical punishment. Other cases have considered the number of officers present, whether or .not the officers displayed weapons, the degree that the officers emphasized their authority and the experience of the accused.

 Where, as here, the statements were obtained while the defendants were in custody, the burden of proving voluntariness is upon the state. Our supreme court has held in *State v. Olds,* supra, that the state must prove such voluntariness by a preponderance of the evidence.

 Considering the factors and under the record here we find that the state has established by a preponderance of the evidence that the statements of each of the defendants were voluntary. *Miranda* warnings had been given. There was no prolonged interrogation. When each defendant advised the officer that he had no more to say, each defendant was returned to his cell. One of the defendants was taken to the hospital and was allowed to stop at a service station to buy cigarettes. The defendants were allowed to talk with one another privately before making the statements. There was no showing of a large number of officers present. No weapons were drawn. Defendants were not prohibited from communicating with the outside world. Both defendants had multiple prior felony convictions and had served time in state prisons and had some experience in criminal matters.

 We now consider whether the statements should be excluded, assuming the arrest to be invalid, because of the fruit of the poisonous tree doctrine of *Wong Sun* or whether they were obtained by means

sufficiently distinguishable to be purged of the primary taint. We likewise consider whether the statements have "become so attenuated as to dissipate the taint." *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939).

One of the means sufficiently distinguishable to obtain untainted evidence is through a statement " 'sufficiently an act of free will to purge the primary taint.' " *State v. Olds,* supra, quoting *Wong Sun.*

On the evidence that defendants had been given *Miranda* warnings, had not been subjected to prolonged interrogation, interrogation ceased at their request, one of the defendants requested medical care for ulcers and was taken to a hospital for such treatment, was permitted to purchase cigarettes and defendants were permitted to talk with one another prior to the giving of the statements, we hold that the connection between the arrest and the statements had become so attenuated as to dissipate the taint.

We affirm.

FLANIGAN, P. J., and TITUS and CAMPBELL, PYLE and KENNEDY, Special Judges, concur.