650 P.2d 814
STATE of New Mexico,
Plaintiff-Appellee,

v.

William Wayne GILBERT,
Defendant-Appellant.

No. 13650.

Supreme Court of New Mexico.

Aug. 30, 1982.

D'Angelo & McCarty, Scott McCarty, Catherine Baker Stetson, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

FEDERICI, Justice.

This is an appeal from the District Court of Valencia County. Prior to trial, the district judge ruled that there was no constitutional requirement that defendant's confession to numerous crimes be suppressed. Following a bench trial, William Wayne Gilbert (defendant) was convicted of one count of first degree murder, one count of first degree criminal sexual penetration, and one count of first degree kidnapping. The victim of the crimes charged was Barbara McMullen. The trial judge sentenced defendant to three consecutive life imprisonment terms. Defendant argues that it was error for the district court to admit evidence of defendant's confession. Defendant also argues that the district court erred in not finding the indictment against him invalid. We affirm the district court.

Defendant was arrested on January 19, 1980, at about 4:30 a.m., following an incident in which shots were fired at the American Sandwich Shop and at Four Hills in Albuquerque. Defendant was advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), upon arrest. He was charged with aggravated battery and booked at about 7:30 a.m. in Albuquerque. In the meantime, homicide detectives Ness and Jasler had been informed of defendant's arrest. By 8:30 a.m., defendant had contacted a bondsman and was seeking to set bond at $10,000 on the aggravated battery charge. The bondsman arrived at the jail at about 9:30 a.m., but was informed by detention officials at about 10:30 a.m. that "more charges had come up" and that defendant could not be released at that time. The police had information that defendant had been in the home of Kenn and Noel Johnson on the night they were murdered. Ness and Jasler took defendant to the police station at about 10:30 a.m. They again read defendant his *Miranda* warnings and defendant said he understood them. Ness and Jasler then questioned defendant. When the matter regarding the murder of Kenn and Noel Johnson came up and defendant

realized he was being questioned about these murders, he asked to see a lawyer. Defendant then contacted an attorney who advised defendant to say nothing to police in the meantime. The attorney consented to the police taking fingerprints, samples and a photograph of defendant. Ness and Jasler did not ask any further questions at that time. While defendant's fingernail samples were taken, criminalistics detective Ramirez, who had performed crime scene work in the Johnson homicides, discussed the Johnson crime scene with defendant. In the meantime, Ness and Jasler learned that the body of Carol Gilbert, defendant's wife, was found in the Gilbert home in Los Lunas. Upon seeing defendant again, Ness informed defendant that the police were now aware of Carol's death, saying that "the ballgame is up" and that sooner or later defendant would have to do something. Defendant then told Ness that he would like to be left alone for an hour and that if Ness returned in an hour, defendant would talk to him. Defendant's request was granted and Ness returned 45 minutes to an hour later, at about 2:30 p.m. Murder charges had been filed against defendant at about 1:30 p.m. Defendant was taken to an interview room at the jail where he stated that he should call his attorney. Ness informed defendant that he could use the phone, but defendant responded that his attorney would advise him to say nothing. Defendant did not call his attorney and proceeded to confess to two murders of which the police were not aware. Defendant was then moved to the police station. At the police station, defendant again stated that he should call his attorney and again stated that his attorney would tell him to say nothing to the police. As before, Ness offered the phone to defendant, but defendant did not call his attorney. During the remainder of the afternoon, defendant confessed to killing his wife, the Johnsons, Barbara McMullen, and two other people, one male and one female, whose murders were unknown to the police at that time. That evening, defendant directed the police to the body of Barbara McMullen.

## I. WHETHER DEFENDANT'S CONFESSION SHOULD BE SUPPRESSED AS BEING THE RESULT OF ILLEGAL DETENTION.

■ Defendant argues that he was ready to bond out of jail at 9:30 a.m. on the aggravated battery charge and that he was illegally detained for four hours before being charged with some of the crimes to which he confessed. He claims that his confession should be suppressed because it was elicited after defendant had been detained in jail for crimes which the police had no probable cause to believe had been committed by defendant. Defendant cites *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); and *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), for the proposition that his confession should be suppressed.

In *Wong Sun,* the test of whether a confession should be suppressed was said to depend upon whether evidence was obtained by exploitation of an illegality or was sufficiently attenuated to be purged of the primary taint of illegality. In both the *Brown* and *Dunaway* cases, the police, acting pursuant to information which did not amount to probable cause, nevertheless detained the individuals, who eventually confessed to the crimes charged in the cases during the period of illegal detention. It was held in *Brown* and *Dunaway* that the confessions were to be suppressed because the Fourth Amendment requires that any detention for custodial interrogation be based on probable cause.

In discussing the constitutional requirements related to detention for custodial interrogation, the Court in *Brown* set forth a test for determining whether there is a causal connection between illegal detention and the resultant confession. The Court said that voluntariness and the Fifth Amendment considerations involved in *Miranda* warnings were but a threshold question for Fourth Amendment purposes. Also to be considered in the analysis of whether there is a causal connection between the

illegal detention and the resultant confession are "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, * * * and, particularly, the purpose and flagrancy of the official misconduct * * * " *Brown, supra* 422 U.S. at 603–04, 95 S.Ct. at 2261–62 (footnotes and citations omitted).

Considering the principles set forth above in the context of the case before us, we conclude that there was no illegal detention because the police had probable cause to make an arrest when there were facts and circumstances within their knowledge or they had reasonably trustworthy information sufficient to warrant a prudent man to believe that the individual arrested committed an offense. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Here, the police received information on January 18 that defendant had been in the Johnson home the night Kenn and Noel Johnson were murdered. The incident at the American Sandwich Shop which led to defendant's arrest, was somewhat bizarre. Defendant was known by police to have been dressed in combat fatigues when he fired shots in the sandwich shop. He also had many rounds of live ammunition and a rifle in his possession when he was arrested. Based on such facts, police officials had sufficient information to warrant a prudent person to believe that defendant might have been responsible for the Johnson murders.

Although defendant was not initially informed that he was being detained for questioning about the Johnson murders, that fact became clear to him during his initial interrogation. Defendant was under no illusions regarding the purpose of the questioning, as he immediately sought and spoke to an attorney on the telephone. Defendant, of course, was aware of his right to an attorney, as *Miranda* warnings had been read to him immediately before the questioning began.

Soon after defendant spoke to his attorney, the police learned that the body of Carol Gilbert had been found in the Gilbert home in Los Lunas. At that time, the police had probable cause to detain defendant for the third murder.

Although defendant was not formally charged with murder until about four hours after the appearance of the bondsman, it is clear that defendant was aware that his extended detention was based on suspicion of murder. We hold, therefore, that since defendant was aware of the purpose of his detention, and because such detention was based on probable cause, there is no illegal detention requiring suppression of defendant's confession procured during the period of that detention.

## II. WHETHER DEFENDANT'S MIRANDA RIGHTS WERE VIOLATED.

When the detectives first questioned defendant, they read *Miranda* warnings to him which he said he understood. Defendant answered some questions and when he stated he wanted to see a lawyer, all questioning ceased. Later, although the criminalistics detective mentioned the Johnson murders to defendant, no incriminating statements were made by defendant to him. Indeed, had such statements been solicited, United States Supreme Court case law would require their suppression as the product of the "functional equivalent of interrogation," *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), and of a violation of the principle that defendant's right to cut off questioning be "scrupulously honored." *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

■ Later that same day, following the criminalistics procedure, Ness informed defendant that the police were aware of his wife's death, that "the ballgame [was] up," and that sooner or later defendant would have to do something. There was no interrogation regarding this second charge at that point. The police honored defendant's request to be alone for an hour and then commenced questioning on the second charge, the murder of defendant's wife. The United States Supreme Court held in *Michigan v. Mosley,* 423 U.S. at 103–04, 96 S.Ct. at 326, that there is no violation of *Miranda* principles where a second interrogation is restricted to a crime that was not

the subject of an earlier interrogation, so long as an accused's right to cut off questioning, when he asserts that right, is "scrupulously honored." A review of the circumstances leading to defendant's confessions reveals that his "right to cut off questioning" was fully respected in this case. The resumption of interrogation on the second crimes was not, in and of itself, a violation of *Miranda* principles.

We must address whether a second fresh and full *Miranda* warning should have been given in this case before the second interrogation began. A confession is not necessarily invalid because warnings as to the right to remain silent and to counsel were not given in full each time the interrogation process was resumed after interruption. *Miller v. United States*, 396 F.2d 492 (8th Cir. 1968), *cert. denied*, 393 U.S. 1031, 89 S.Ct. 643, 21 L.Ed.2d 574 (1969); *United States v. Delay*, 500 F.2d 1360 (8th Cir. 1974). *See Commonwealth of Pennsylvania v. Maroney*, 348 F.2d 22 (3rd Cir. 1965). In this case, although defendant was not read *Miranda* rights immediately before being questioned about the death of his wife, he was aware of such rights. *Miranda* warnings had been read to defendant on two occasions earlier in the day, as recently as four hours before. Defendant had spoken to an attorney earlier in the day, and had been advised to say nothing to the police. Immediately prior to any interrogation and before giving his confession, defendant stated that he should talk to his attorney, but then stated that the attorney would tell him to say nothing to the police. Defendant decided not to call an attorney even though a phone was made available to him. Defendant expressed his understanding of his constitutional rights; the purpose asserted in *Miranda* had been met. We hold that defendant was fully aware of his rights before this second interrogation commenced.

The only remaining question is whether he waived the exercise of one of those rights, the right to the presence of a lawyer. Once advised of his *Miranda* rights, an accused may himself validly waive his rights and respond to interrogation. *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *State v. Trujillo*, 95 N.M. 535, 624 P.2d 44 (1981). Such a waiver "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused'." *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (citations omitted). In this case, defendant was thirty years old, a Vietnam veteran, businessman, undercover DEA agent, had been arrested for rape in January 1979, and was familiar with police procedures, *Miranda* warning procedures in particular, by his own admission at trial.

The courts must presume that a defendant did not waive his rights; the prosecution's burden is great, but in at least some cases, waiver can be clearly inferred from the actions and words of the person interrogated. An explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent or the right to counsel guaranteed by *Miranda*. Here, waiver can clearly be inferred by defendant's statement which immediately preceded his confession that it wouldn't do any good to call his attorney, "he'll just tell me not to talk." His subsequent confession can only be interpreted as an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. Defendant testified that he knew his rights at the time of the confession. It is beyond comprehension that defendant did not understand that the content of his confession would have other than the most serious consequences.

The defendant was fully advised of his rights; there was a voluntary, knowing and intelligent waiver of such rights. The trial court's admission of defendant's confession was not an abuse of discretion. We affirm.

## III. WHETHER THE INDICTMENT AGAINST DEFENDANT SHOULD BE DISMISSED.

■ The court clerk testified that pursuant to a standing order from the district judge, she provided two substitute grand jurors. She could not recall whether the grand jury foreman had requested the substitutes. Defendant argues that the indictment against him should be dismissed because unauthorized persons attended the grand jury. Defendant claims that the substitution of two grand jurors by the court clerk was done without statutory authority under Section 31–6–2, N.M.S.A. 1978 (Cum. Supp. 1981), which provides that the foreman may, for good cause, request that the court replace jurors.

Defendant's reliance on Section 31–6–2 is misplaced. Even though Section 31–6–2 requires a showing of good cause where a grand jury foreman requests the court to excuse or discharge an individual grand juror, no showing is required pursuant to Section 31–6–1, N.M.S.A. 1978 (Cum. Supp. 1981), which states that the "district judge may discharge or excuse members of a grand jury and substitute alternate grand jurors as necessary." There is no showing in this case that the grand jury foreman requested the substitutions that took place. As an agent of the court, it was proper for the court clerk to act pursuant to the standing order of the district judge so long as such order did not amount to an abuse of discretion. There is no showing that the district judge abused his discretion in this case.

■ Defendant also claims that because Section 31–6–6, N.M.S.A. 1978 (Cum. Supp. 1981), requires that oaths be administered to officers of the court, and because there is no record that the district attorney in this case signed or filed such an oath, the district attorney was not authorized to attend the grand jury. Section 31–6–6 requires that oaths be administered to court officers, but there is no express requirement that such oaths be signed and registered. Although signature and registration is proof that the oath was administered, proof that the oath was taken can be accomplished in other ways. Here, the defendant admits in his brief in chief that the district attorney took the oath, but questions the propriety of the district attorney's presence at the grand jury proceedings where a signed oath was not registered. All that Section 31–6–6 requires is that an oath be taken and, while it is desirable that a signed oath be registered, registration is not an absolute requirement of the statute. The indictment was valid and the trial court properly refused to dismiss it.

The defendant received a full, fair, legal and constitutional trial. The trial court and the sentences are hereby affirmed.

IT IS SO ORDERED.

EASLEY, C. J., SOSA, Senior Justice, and PAYNE, J., concur.

RIORDAN, J., concurs in result.