711 P.2d 3

**STATE of New Mexico, Petitioner,**

v.

**Mier COHEN and Erez Atava,
Respondents.**

No. 15818.

Supreme Court of New Mexico.

Dec. 9, 1985.

Paul G. Bardacke, Atty. Gen., Charles D. Noland, Asst. Atty. Gen., Santa Fe, for petitioner.

Reber Boult, Nancy Hollander, Albuquerque, for respondents.

## OPINION

RIORDAN, Justice.

Defendants Mier Cohen (Cohen) and Erez Atava (Atava) were indicted for possession of cocaine and trafficking of a controlled substance. Cohen was also charged with speeding. After a hearing on a motion to suppress evidence, the trial court found that the stop of the defendants' automobile was proper; that the consent to search was voluntary; but that the detention of Cohen and Atava before the consent was obtained was an "illegal siezure" and, therefore, the consent was invalid as a matter of law.

The State appealed to the Court of Appeals, raising the issue of the reasonableness of the detention as well as the ques-

tion of voluntariness as a matter of law, considering the totality of the circumstances.

The Court of Appeals affirmed the trial court. We granted certiorari and reverse the Court of Appeals and trial court, and reinstate the case on the trial docket.

**FACTS.**

On January 5, 1984, Summers (Summers) of the New Mexico State Police stopped a Pontiac automobile for speeding sixty-one miles per hour in a fifty-five mile-per-hour zone. The automobile was driven by Cohen and occupied by a passenger, Atava. Officer Summers decided to give Cohen a ticket for speeding. Summers became concerned by other facts he observed. He noticed the automobile was an out-of-state rental car that had been paid for by cash and was a one-way rental from Florida to California. The car did not contain much luggage for a cross-country trip; both the occupants appeared to be foreigners and both appeared to Summers to be more concerned about the stop than was ordinarily encountered for stops of this kind. While Summers was in his car writing up the speeding ticket and waiting for a response on his request to the National Crime Information Computer (NCIC),[1] Cohen got out of his automobile and walked back toward the state police car. Summers got out of his car and met Cohen between the automobiles. Cohen told Summers that he was in a hurry and would like Summers to issue his ticket so he could leave. Summers testified that Cohen appeared nervous and anxious and, that with the temperature about twenty-five degrees on a cold and windy day, it seemed very unusual that Cohen would get out to talk to the officer.

Summers considered the facts he had observed in conjunction with information he had recently received in a state police course concerning common factors in narcotics trafficking cases in New Mexico ("profile" factors). These "profile" factors were: (1) two persons appearing to be for-

---

1. The standard procedure was to make a request of the National Crime Information Computer as to whether the person stopped was wanted or the car stopped was reported stolen.

eigners, (2) driving a rental car with Florida license plates, (3) across the country (4) with a small amount of luggage, (5) and with a one-way car rental being paid for in cash.

Based on his observations, Summers decided that he had a reasonable suspicion to investigate further. He called for assistance from other state police officers and shortly thereafter, Officer Marino (Marino) and Sargent Velarde (Velarde) (the officers in charge of narcotics) responded. While waiting for the additional officers, Summers filled out a consent to search form in anticipation of requesting permission from Cohen to search the automobile. The NCIC response was received and Summers was informed that there were no warrants outstanding for Cohen and that the car was not reported as stolen. A few minutes later,[2] the other officers arrived and were briefed by Summers.

After the other officers arrived, both Cohen and Atava were asked to get out of the car. Cohen was advised of his Miranda rights. Velarde also told him that they would like to search his car for weapons and narcotics. Cohen was presented with the consent to search form. Cohen "read the form", consented to the search and signed the form. No threats were made to obtain the consent.[3]

Because it was cold and getting dark, and because there was heavy traffic on the highway, the officers decided to drive the car to the closest, warm; well-lit area to conduct the search. Cohen was instructed to follow one patrol car and the other police car (with Atava as a passenger) followed Cohen to a service station three miles away. The car was driven inside and the search was conducted. During the search the officers noticed an extra tire in the trunk. It's bolt pattern was different than

that of the rental car (which had its spare tire in place) and it was flat. When Marino picked it up, he noticed there was something "loose" inside. The tire was broken down and eleven pounds of cocaine were found inside.

The issue is whether the detention of Cohen and Atava for a short time after Summers received a negative response from his NCIC inquiry voids the consent as a matter of law.[4]

## REASONABLENESS OF DETENTION.

Summers testified that he stopped the car at 5:09 p.m. The initial stop of Cohen and Atava was proper.[5] He requested an NCIC check on the defendants and the car. Within five minutes, Cohen exited the car and approached Summers' patrol unit. After a conversation with Cohen, Summers decided to "pursue the investigation further." He testified that it was ten to fifteen minutes after stopping. It was at least 5:19 p.m. He requested assistance from Marino who was at police headquarters. It took Marino three to four minutes to arrive at the location where the defendants were stopped. During this period, Summers received a reply from his NCIC inquiry that must have been between 5:19 p.m. and 5:24 p.m. Marino and Velarde arrived and were briefed. Cohen was presented with a consent to search form which he signed after being advised that he did not have to consent to a search. After a brief examination of the items in the car, the officers decided that since it was getting dark and there was a lot of traffic they would move the car to search it. Cohen was directed to follow the police unit to a service station three miles away which Summers testified was the closest, warm, well-lit area.

**2.** The record does not contain the exact time involved, but the car was stopped at 5:09 p.m. and the defendants were placed under arrest after the cocaine was seized, about fifty minutes later.

**3.** Summers and Marino testified at the motion hearing. Neither Cohen nor Atava testified.

**4.** No cross-appeal was taken and the evidence introduced at the suppression hearing supports the trial court's finding in this regard.

**5.** The consent was attacked not on the basis of being coerced or uninformed, but rather being voluntarily but illegally obtained by virtue of the detention.

After the search was commenced, the tire was observed "about 5:25" or "5:35" at the service station.[6] The cocaine was found after the tire was taken apart ten minutes later. The period of time that could have elapsed according to the testimony from the time that the NCIC check came back negative until the consent form was signed is between three minutes and thirteen minutes (5:19 until 5:22, if the tire was located at 5:25 as it took "three or four minutes to drive to the service station," or 5:19 until 5:32, if the tire was located at 5:35).

The issue then becomes whether the detention of Cohen and Atava for a few minutes while the officer asked for and obtained a consent to search form was unreasonable in light of the facts that Summers had observed.[7] We hold that it was not.

A recent case on the issue of what is a reasonable detention is *United States v. Sharpe*, — U.S. ——, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).[8] The Court in *Sharpe* pointed out that only unreasonable searches and seizures are prohibited by the Constitution. However, investigatory stops of vehicles are subject to the limits of the fourth amendment also. In discussing the reasonableness of a stop, (which is analagous to a detention once the reason for a valid stop expires, as did here when the NCIC report came back negative) the Court quoted from *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) the following test: "[W]hether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Sharpe*, — U.S. at ——, 105 S.Ct. at 1573, 84 L.Ed.2d at 613.

This is the test of "reasonableness" that was used in analyzing the officers

conduct in *Sharpe*.[9] In determining the purpose of a stop, the court must consider the law enforcement purposes being served as well as the time reasonably needed to effectuate their purposes, *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), and if the purpose underlying an investigative stop or detention (that of investigating possible criminal activity) is to be met, the police must, under certain circumstances, be able to detain the individual. *See Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

The Court in *Sharpe* stated:

In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.

*United States v. Sharpe*, — U.S. at ——, 105 S.Ct. at 1575, 84 L.Ed.2d at 615–616.

In the instant case, Summers detained Cohen and Atava only for a few minutes after he received the negative report from NCIC and wrote out the speeding ticket. Considering the information that he relied upon, (i.e., there were two men in the car with out-of-state plates; they appeared to be foreigners; they were on a cross-country trip in a one-way car rental paid for by cash from an area suspected by authorities to be a point of origin in drug shipments; that they appeared more nervous than the average person stopped for speeding; that they appeared to want to get away from the officer as quickly as possible) and in conjunction with the number of these factors that the officer had been told previously were common in cases involving recent drug arrests in New

**6.** Marino testified that the tire was found at "about 5:25". Summers testified that the tire was first observed at "about 5:35".

**7.** We assume for the sake of discussion that the officers need grounds such as reasonable suspicion to ask for consent to search.

**8.** The Court of Appeals opinion in this case was filed on March 5, 1985, some fifteen days prior to *Sharpe*.

**9.** The detention in *Sharpe* was approximately twenty minutes.

Mexico, this detention was based on reasonable suspicion.

Cohen and Atava argue that the consent would have been proper if obtained prior to the NCIC check being completed, but the few minutes that they were detained after the NCIC check was completed, until the narcotics officers arrived, made the arrest illegal. However, common sense and ordinary human experience must govern over rigid criteria. *Sharpe.* Creative judges engaged in *post hoc* evaluations of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. *Id.* We do not believe the fourth amendment as interpreted by the United States Supreme Court requires such absurd results.

While this case was pending the Tenth Circuit Court of Appeals decided two similar cases: *United States v. Recalde,* 761 F.2d 1448 (10th Cir.1985) and *United States v. Uribe,* No. 84–1146 (D.N.M. filed June 17, 1985).[10] Both cases involve consent searches in which the consent was obtained after defendants had been properly stopped. In both cases the court reversed the conviction and suppressed the evidence seized during a search of defendant's automobile.

*Recalde* is distinguishable from the current facts in that the arresting police officer was acting on more than "gut instinct" in detaining Cohen. In *Recalde,* the officer originally stopped Recalde for speeding, then issued a citation and conducted a NCIC check on the status of Recalde's car. The car was registered to another person, whom Recalde did not know how to contact. An assisting police officer was then called. The NCIC response was

negative. Recalde gave the officers verbal permission to search the trunk of his car. Nothing unusual was found. The arresting officers instructed Recalde to follow them to the police station.[11] Inside the station, Recalde was given Miranda warnings and was asked to sign a consent to search form, which he did. Recalde testified that he did not read English well and the officer did not read it to him. The prosecution conceded that the search of Recalde's car at the police station was not based on probable cause or judicial warrant. They relied entirely on the consent form Recalde signed at the station. However, the court stated that the extended detention and movement prior to obtaining the consent to search could not be justified. The court held that the reasonableness of the detention and investigation ended after the first fruitless search. In continuing the detention after nothing was found, all subsequent investigation, including the signed consent form, became tainted. That is not the case with Cohen and Atava, who fit the drug courier profile and appeared unusually nervous. An officer must be aware of these specific articulable facts, together with rational inferences from those facts to provide the basis for suspicion. *United States v. Brignoni-Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975). The facts and inferences are to be judged by an objective standard, i.e., would the facts available to the officer warrant the officer as a person of reasonable caution to believe the action taken was appropriate? *State v. Hilliard,* 81 N.M. 407, 409, 467 P.2d 733, 735 (Ct. App.1970). Unsupported intuition is insufficient. *United States v. Mallides,* 473 F.2d 859, 862 (9th Cir.1973). Therefore, the issue here is whether the facts known

---

**10.** *United States v. Uribe* is an unpublished order and judgment from the United States Court of Appeals for the Tenth Circuit.

**11.** Recalde was a resident alien from Argentina. He gave undisputed testimony that his upbringing and experiences in Argentina had instilled in him an acquiescence to police authority. He testified that he did not feel free to leave under these circumstances and felt that the police officer was not through with him. Recalde was

never told he was free to go. The officer testified that Recalde was free to leave, but the vehicle would have been detained for suspected transport of illegal narcotics. Recalde was traveling alone on an interstate highway, five miles from the nearest town. The Court concluded that "Recalde was not, by any objective standard, free to go." *United States v. Recalde,* 761 F.2d at 1459.

to the police constituted reasonable suspicion to detain defendants for any period of time. The reasonableness of the detention rests on the balancing of competing interests: "[T]he nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Recalde,* 761 F.2d at 1454 (quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)).

■ The court in *Sharpe* held that the test for whether the length of a *Terry* stop met the fourth amendment reasonableness requirement was whether the police investigated "in a diligent and reasonable manner" that is "likely to confirm or dispel their suspicions quickly." In light of the short amount of time Cohen and Atava were detained, a few minutes, the governmental interest of stopping drug trafficking is justified. Summers was completing the consent form for Cohen to sign while assisting officers were enroute. He was investigating in a diligent and reasonable manner. Thus, we hold there was no unreasonable detention.

## VALIDITY OF CONSENT.

■ Defendants were asked to get out of the car. Atava was taken back to the police car. They were separately administered their Miranda rights. Both stated they understood their rights. Cohen was presented with the consent to search form and was told that the officers would like to search his car for weapons and narcotics. He was advised that he did not have to sign the form.[12] Cohen agreed to the search, read the form and then signed it. For safety reasons, the automobile was moved to a nearby gas station. These facts, as well as the lack of any claim that the consent was involuntary, distinguish this case from that of *Recalde.* The consent was voluntary and upon the three-tiered analysis in *Recalde* it was, first, unequivo-

cal and specific as stated in the consent form signed by Cohen. Second, consent was given without duress or coercion. Cohen was informed that he did not have to sign the form. In addition, Cohen was given his *Miranda* rights and stated he understood them. Third, there is a presumption against waiver of constitutional rights. The facts appear as though the prosecution has met its burden of establishing both the absence of any duress or coercion and the specific and unequivocal nature of the consent. Voluntariness is a question of fact to be determined from the totality of the circumstances. *Recalde,* 761 F.2d at 1457. The court in *Recalde* found the consent tainted by the illegal detention. That is not the case here. We have determined that the detention was legal. In addition, New Mexico follows the rule that a voluntary consent can validate what might otherwise be an illegal search and seizure. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Ruud,* 90 N.M. 647, 567 P.2d 496 (Ct.App.1977). The validation of the search hinges on the voluntariness of the consent. Cohen's state of mind and the procedure of the police in advising him of his rights are factors considered in assessing the voluntariness of the consent. Thus, the consent form alone could validate the search that followed.

The second decision from the Tenth Circuit Court of Appeals is *United States v. Uribe,* in which Uribe was stopped in a routine traffic roadblock for checking driver's license and vehicle registration. The car Uribe was driving was registered to someone else. Uribe did not know how to contact the owner. Uribe twice orally consented to allow officers to search the trunk. During the second search the officers noticed a "sweet odor" consistent with that of cocaine or deodorants used to mask the odor of cocaine. Upon a third inspection of the trunk and also of the rear seat area, a "white powdery substance" was

---

12. We do not hold that either an advice of rights or advice that a person does not have to consent to a search is required when obtaining a con-

sent to search, but we merely recite the facts from this case.

found. One officer left for five or six minutes to obtain a field test kit. The powdery substance was negative for the presence of narcotics. Uribe was further questioned and then asked to accompany officers to the police station one and one-half miles in a nearby city. Oral consent was again given to search the vehicle. Officers then found several plastic packages containing cocaine. Uribe signed a waiver of rights one hour and forty minutes after the initial stop. The Court found that there was no probable cause to detain or arrest Uribe and there was no consent to go to the police station; thus, there was not sufficient attenuation between the unlawful seizure of Uribe and the consent to search.

The facts in *Uribe* are different from this case. In *Uribe*, the officers repeatedly searched Uribe's trunk. They had no probable cause, as their efforts turned up nothing until after the move to the police station. In this case, Cohen signed the consent form first, then the officers pursued the search diligently. An attempt was made to search the trunk, but because of darkness, traffic and cold the effort was moved to the closest place available, a nearby gas station. The movement of the car is distinguishable in that it was for safety, light and warmth to a nearby service station not to the police station as in *Uribe* and *Recalde*. The procedure the officers followed in this case was done in a manner that would have quickly confirmed or dispelled their suspicions. *Sharpe,* —— U.S. at ——, 105 S.Ct. at 1575, 84 L.Ed.2d at 615–616. There was no unreasonable delay.

*United States v. Gonzalez,* 763 F.2d 1127 (10th Cir.1985) is another case similar to *Uribe* in that the police officer noticed the odor of a deodorizer that is often used to mask the odor of narcotics. The officer took Gonzalez to the police station where a speeding citation was issued and a consent to search form signed. Gonzalez was originally detained for speeding and was moved to investigate ownership of the car. No

drug courier profile was used. Based on the officers' intuition, the car was searched. The court found the length of the stop unreasonable[13] and there was insufficient attenuation between the illegal detention and the consent to search. *Gonzalez* is more similar to *Uribe* than the facts of this case. Here, we have more than just *intuition,* the consent form was signed *before* the movement of the car, and the car was *not* taken to the police station but to a nearby gas station.

In light of the above factual distinctions and the length and reasonableness of the detention of defendants, we do not believe that the search and seizure in this case was unreasonable. The officer's action was justified at its inception and the means of investigation were appropriate and diligently pursued. The consent to search form was signed voluntarily, thus validating the evidence found. We reverse the trial court and the Court of Appeals and reinstate the case on the trial docket.

IT IS SO ORDERED.

FEDERICI, C.J., and STOWERS and WALTERS, JJ., concur.

SOSA, Jr., Senior Justice dissenting and adopting Court of Appeals' opinion as his dissent.

### APPENDIX

No. 7818.

Court of Appeals of New Mexico.

March 5, 1985.

**OPINION**

HENDLEY, Judge.

The state appeals the trial court's order suppressing evidence. The issues concern detention and consent. Defendants raise an issue concerning the initial stop, claiming it was a pretext stop. Because of our disposition, it is not necessary for us to reach that issue.

We affirm.

**13.** Gonzalez claimed that the officer detained him for approximately twenty minutes.

Officer Summers of the New Mexico State Police was on radar patrol on I–40 near Albuquerque. A few weeks earlier, he had attended a seminar on narcotics smuggling on I–40, at which he learned that there was a drug courier profile, based on recent cases, made by the police. For I–40, the profile is made up of the following characteristics: (1) Florida license plates; (2) rental cars; (3) occupants, usually two, who appear to be foreigners, usually of Latin descent; and (4) very little luggage for a cross-country trip, with a destination of Los Angeles.

At 5:07 or 5:09 p.m., Summers clocked defendants' vehicle going sixty-one miles per hour in a fifty-five mile per hour zone. After the vehicle passed, he noticed the Florida plates and the fact that there were two males inside. He engaged his emergency equipment and pulled the car over. He noticed a sticker indicating the vehicle was rented. Although Summers said that there was not much luggage in the car, there were some new clothes and two suitcases. Summers received identification from the driver, Mier Cohen, and the passenger, Erez Atava, and the rental contract on the car. Based on the names, Summers believed that defendants were foreigners. The rental contract indicated that the car was prepaid in cash and was en route from Florida to Los Angeles.

Summers took the papers and told the occupants that Cohen would be cited for speeding. He also told them that he wanted to run a check on the documents. Summers went back to his car. Some time passed, during which Summers saw defendants conversing and looking back at him. Cohen got out of the car and began walking back to the police vehicle. Summers got out and met him between the cars. Summers thought this was unusual because it was cold and windy outside. Cohen wanted to know whether he was being cited and whether it would go on his record. Summers described Cohen as more nervous than a normal person at this time. Summers told Cohen that it was cold outside, that he had not received a reply yet, and that he should go back to his vehicle.

After Summers went back to his vehicle, he decided to radio for assistance from the narcotics division. Then Summers received negative replies to his inquiries concerning the defendants' documentation and their vehicle. He waited for the assistance to arrive, during which time he prepared a consent to search form. When the assistance arrived, he explained the situation to the two other officers, Velarde and Marino.

The officers then approached defendants' car. Velarde approached Atava and took him back to the police vehicles. Summers and Marino approached Cohen, handed him the consent form, and asked him to get out of the vehicle. Cohen was read his Miranda rights and said he understood his Miranda rights. Cohen was asked if he would mind if the vehicle was searched. He said that the officers could search. Cohen signed the consent form. Velarde testified that he told Cohen that Cohen did not have to consent to a search. For safety reasons, the vehicles were driven to a service station, where the search was performed.

The search revealed eleven pounds of cocaine in an extra spare tire in the trunk of the car. The tire was first observed at 5:40 or 5:45 p.m. Summers testified that approximately forty minutes elapsed between the stop and the seizure of the cocaine, and that defendants were not free to leave during this entire time. Summers could not remember how long it was between the negative reply to his National Crime Information Center (NCIC) inquiries and the arrival of the assisting officers. The state asserts it was fifteen to twenty minutes.

**Detention**

Two cases sculpt out some of the situations where the police may encounter citizens. *United States v. Berry*, 670 F.2d 583 (5th Cir.1982); *Wilson v. Superior Court of Los Angeles County*, 34 Cal.3d 777, 195 Cal.Rptr. 671, 670 P.2d 325 (1983), *cert. denied*, 466 U.S. 944, 104 S.Ct. 1929, 80 L.Ed.2d 474 (1984). First, there are communications or encounters involving no

coercion or detention; these do not involve the fourth amendment and the police need no justification whatsoever to do them. Second, there are brief seizures or detentions which are strictly limited in scope and duration; for these, the police need only a reasonable suspicion. Third, there are full-scale arrests; for these, probable cause is necessary.

A warrantless arrest must be supported by probable cause. *State v. Garcia,* 100 N.M. 120, 666 P.2d 1267 (Ct.App.1983). Probable cause exists when the facts and circumstances within the knowledge of the officers, based on reasonably trustworthy information, are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed. *State v. Snedeker,* 99 N.M. 286, 657 P.2d 613 (1982). It requires the officer to believe, and have good reason to believe, that the person he arrests has committed a felony. *State v. Jones,* 96 N.M. 14, 627 P.2d 409 (1981).

A police officer may, in appropriate circumstances, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *State v. Galvan,* 90 N.M. 129, 560 P.2d 550 (Ct.App.1977). *See also Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In such a case, the officer must have a reasonable suspicion that the law has been or is being violated. A reasonable suspicion means that the officer must be aware of specific articulable facts, together with the rational inferences therefrom. *State v. Galvan.* It is these facts and reasonable inferences that provide the basis for the suspicion. The facts available to the officer must convince a person of reasonable caution to believe that the action taken is appropriate.

In this case, the information the police had on these defendants was a perceived match between the elements of the police's drug courier profile and some characteristics exhibited by defendants, but little more. The "little more" was that Cohen was more nervous than the normal person. It should be noted that nervousness is part

of some drug courier profiles. *See Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Berry.* A drug courier profile is simply a series of characteristics that the police believe many drug smugglers meet. *Berry.* Most of the drug courier profile cases have arisen in airports and the profile varies from airport to airport. What is clear from the cases is that the drug courier profile by itself will not provide probable cause to arrest. *United States v. McCaleb,* 552 F.2d 717 (6th Cir. 1977). Whether or not it provides a reasonable suspicion depends on the other factors in the case because the drug courier profile describes a large category of innocent travellers. *See Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980).

The state claims that the lower court was wrong when it said that "there is no case that finds the courier profile to even justify a Terry type [sic] stop." We disagree. The cases on which the state relies do not find that a match between the drug profile and certain characteristics of the defendant or his or her behavior is sufficient. Most of the cases cited by the state have one of two additional factors present. In one line of cases, the additional factor is that the defendants have lied to the police when initially questioned in a consensual encounter. *E.g. United States v. Jodoin,* 672 F.2d 232 (1st Cir.1982); *United States v. Vasquez,* 612 F.2d 1338 (2d Cir.1979); *United States v. Elmore,* 595 F.2d 1036 (5th Cir. 1979), *cert. denied,* 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980). In another line, the additional factor is that the police checked the history of the defendant's ticket to know where he was going; if he was going to a source city, they contacted the police there and had the defendant followed; if the defendant went to an area of the city known for drug trafficking, that would be the additional factor. *See United States v. Post,* 607 F.2d 847 (9th Cir.1979).

Applying these rules to this case, once the officer received the negative reply to his NCIC inquiries, all he was left with were the elements of the drug courier profile and nothing else. The few elements of

the drug courier profile, by themselves, do not provide a reasonable suspicion. *See Berry; Galvan.* Under the facts here, after NCIC cleared defendants' papers, the police kept defendants' papers, two additional officers appeared, and defendants were separated. This was not a continuation of the original stop for questioning and investigation. This was similar to the circumstances which were held to have the instrusiveness of an arrest in *Royer.* The detention, after clearance from NCIC, was illegal.

### Consent

The next question is whether the illegal detention tainted the consent. In order for a consent to eliminate any taint, there must be proof that consent was voluntary and that it was not the product of the illegal detention. *Berry.* The trial court found that consent was voluntary but that it was tainted by the illegal detention. We agree.

In analyzing whether a confession is purged of the taint of an illegal arrest, courts require inquiry into the following factors: the temporal proximity between the arrest and the confession; the presence of intervening circumstances; and the purpose and flagrancy of the official misconduct. *Taylor v. Alabama,* 457 U.S. 687, . 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *State v. Gilbert,* 98 N.M. 530, 650 P.2d 814 (1982). The courts use this analysis in fourth amendment cases, too. *E.g. Royer; Berry; Wilson; United States v. Robinson,* 690 F.2d 869 (11th Cir.1982).

The state does not argue that the taint was dissipated by using the three-factor analysis presented in *Gilbert.* Rather, the state simply contends that a voluntary consent given in a non-coercive atmosphere overcomes the taint of any illegal detention. To the extent that *State v. Ruud,* 90 N.M. 647, 567 P.2d 496 (Ct.App.1977), may be read to say that a voluntary consent, without more, can validate a consent tainted by an illegal detention, it is not to be followed. *Ruud* found the consent to be involuntary. Accordingly, the issue of taintedness was not reached.

The state cites only *State v. Kennedy,* 290 Or. 493, 624 P.2d 99 (1981), as authority. *Kennedy* is distinguishable. In that case, the officers stopped defendant, saying they wanted to talk. Defendant asked about what. The officers said drugs. Defendant said that he was not carrying any and immediately offered to allow the police to search. In the present case, defendants were detained unlawfully for fifteen to twenty minutes, they were separated, and the officers requested Cohen's consent after asking him to leave the car and stand in the cold, while they read him his rights. *Kennedy* is not applicable authority in this situation.

The state's attempt to distinguish *Royer* by simply relating the facts of *Royer* is unpersuasive. This case is similar to *Royer.* Both cases involved an illegal detention; both involved a consent to search; both involved defendants who were moved around by the police prior to requesting the consent; both involved defendants who were not free to leave. There is no significant difference between this case and *Royer.*

In *Berry,* the court found that there were substantial intervening circumstances which served to attenuate the taint. These were that the two defendants were told that they did not need to consent, they were told that they could contact an attorney and were offered a phone for this purpose, and they were permitted to consult with one another. In *United States v. Gooding,* 695 F.2d 78 (4th Cir.1982), the court held that the taint was not vitiated because the illegal seizure and the consent all occurred in the same brief, continuous encounter. *Taylor v. Alabama* holds that a simple warning is insufficient to attenuate the taint and that there must be a "meaningful" intervening event. In *Robinson,* the advice that one could refuse consent was given well into the illegal detention and the consent was given in the immediate circumstances thereof. The taint was not purged.

The only intervening circumstances were that defendants received Miranda warnings

and Velarde told Cohen that he did not have to consent to search. Under the circumstances of this case, these simple warnings are insufficient to cure the taint. *Taylor.* The reason is because the warning was given at a time when the police were otherwise exploiting the illegal detention. The request for consent occurred during the unlawful detention at a time when the officers retained possession of documents defendants needed to continue on their way. Also, the request for consent came after a substantial period of time in which defendants were kept waiting, not knowing what was transpiring. The request for consent occurred after defendants were separated and Cohen was made to step outside of his vehicle, into the cold. In short, the officers exploited the detention by placing Cohen in a position of vulnerability before they requested consent.

As for the flagrancy of the police misconduct, *Taylor* makes it clear that flagrancy does not necessarily refer to physical abuse or other outrageous conduct. It refers to a deprivation of rights and the police's seizure of the opportunity presented by that deprivation to uncover evidence that they would not have uncovered lawfully. That is what happened here.

Affirmed.

MINZNER, J., concurs.

DONNELLY, C.J., dissents.

DONNELLY, Chief Judge (dissenting).

I disagree with the majority decision holding that the consent to search defendant's vehicle was invalidated by an illegal detention of the defendants, and that the evidence seized by police officers following the search was subject to suppression.

The trial court found the initial stop, request for identification, and the National Crime Information Center (NCIC) check of defendants proper. Following the stop of the defendants, they were delayed somewhere between twenty and forty minutes while state police sought information concerning the car and the defendants from the NCIC. Prior to obtaining a written consent to the search from the defendants, the officers advised defendants both as to their Miranda rights and that they did not have to consent to a search of their vehicle. The officers then conducted a search of the automobile and discovered eleven pounds of cocaine hidden in an extra spare tire in the trunk of the rental car.

In a letter written to counsel issued after a hearing on the motion to suppress, the trial court noted:

[t]he factual statements given in each brief are fairly accurate. At our hearing on this matter, I ruled *that the stop of the Defendants for speeding was proper; that the further investigation into their identities, record, and possessory interests in the vehicle were proper;* that the detention of the Defendants after the officer had completed his duties relative to the traffic stop constituted an illegal seizure; that the search of the defendants vehicle was made without a warrant, not incident to a lawful arrest, and not based on probable cause; *and that the consent given by the Defendants to the search was voluntary.* [Emphasis added.]

The officer who stopped defendants' vehicle sought an NCIC check on the car. After the NCIC information was received, defendants were detained approximately fifteen to twenty minutes longer. Although the trial court found the consent to be voluntary, he found that it was tainted by the illegal detention and that the evidence discovered in the ensuing search should be suppressed. The trial court did not find that the consent to search was coerced or forced from the defendant.

The trial court's finding that the consent was voluntary is in direct conflict with the lower court's determination that the search of the car was improper. Absent a determination that defendants' will was overborne or obtained improperly, the express consent of an accused to a search of his vehicle should validate the search. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State*

*v. Ruud,* 90 N.M. 647, 567 P.2d 496 (Ct. App.1977).

The finding by the trial court that the consent given by the defendants to the search of the automobile was "voluntary", should dictate reversal of the order suppressing the evidence entered herein. The issue as to the voluntariness of the search was the ultimate issue to be determined. The fact that the consent to search was given during the time defendants were detained does not as a matter of law invalidate the consent.

An accused may consent to a search by law enforcement officers and if the consent is genuine neither a search warrant nor probable cause is necessary. *State v. Aull,* 78 N.M. 607, 435 P.2d 437 (1967); *State v. Austin,* 91 N.M. 793, 581 P.2d 1288 (Ct. App.1978). *See also Parkhurst v. State* 628 P.2d 1369 (Wyo.), *cert. denied,* 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981) (upholding validity of search of car trunk after defendants were stopped and consented to warrantless search). In *Schneckloth v. Bustamonte,* the United States Supreme Court stated that the prosecution must demonstrate that the consent to search was voluntarily given and was not the product of duress or coercion; that voluntariness is a question of fact to be determined from the totality of all circumstances; and that "while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *See also United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *State v. Ruud.*

The explanation for the ruling of the trial court as expressed in his letter to counsel appears to invalidate a consent to search given while an accused is in custody. This is not the law in New Mexico. *State v. Herring,* 77 N.M. 232, 421 P.2d 767 (1966), *cert. denied,* 388 U.S. 923, 87 S.Ct. 2126, 18 L.Ed.2d 1372 (1967) (consent can validate an unlawful search). *See also State v. Austin.* As noted in the Annot. "Validity of Consent to Search Given by One in Custody of Officers," 9 A.L.R.3d 858, 873 (1966), "[m]any cases support the conclusion that a person may validly consent to a search even though the consent is given while he is in custody; that the fact of custody does not inherently render the consent invalid." A party can waive his rights under the Fourth Amendment and consent to a search provided that the consent represents a free and uncoerced decision. *State v. Ruud.* Voluntariness of consent to search is a fact question to be determined from the "totality of the circumstances" in each case. Whether or not defendant is under arrest or in custody is not the determinative issue as to the validity of a consent to search. *See United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *United States v. Prichard,* 645 F.2d 854 (10th Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110 (1981); *State v. McMahan,* 583 S.W.2d 540 (Mo.App.1979); *State v. Angel,* 356 So.2d 986 (La.1978).

The mere fact that a defendant is in custody does not alone render an accused's consent to search invalid. *State v. Lange,* 255 N.W.2d 59 (N.D.1977) (upholding search of automobile after defendant was detained, taken to the police station and thereafter gave consent to search); *People v. Zynda,* 53 Ill.App.3d 794, 11 Ill.Dec. 471, 368 N.E.2d 1079 (1977) (upholding validity of defendant's consent to a car search following his arrest); *State v. Angel,* (defendant's consent to search vehicle was affirmed despite determination that his detention was illegal where there was no showing of coercion); *United States v. Allison,* 616 F.2d 779 (5th Cir.1980) (consent to search automobile held valid despite defendant's arrest); *United States v. Williams,* 647 F.2d 588 (5th Cir.1981) (consent of defendant to search personal effects held valid after defendant was detained because he met test of possible drug smuggler); *State v. Plas,* 80 Nev. 251, 391 P.2d 867 (1964) (fact that defendant was in custody and detained for questioning did not negate validity of his consent to search vehicle). In *State v. Plas,* on appeal the court reversed the trial court's ruling that,

because a defendant was held in custody the consent to search was invalid as a matter of law. In the instant case prior to the search of the automobile, the driver was read his Miranda rights and advised that he did not have to consent to the search.

It is not a prerequisite to uphold the validity of a consent to search without a warrant that a defendant first be accorded the rights set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *State v. Ruud; State v. Carlton,* 83 N.M. 644, 495 P.2d 1091 (Ct.App.1972). Neither is a consent to search rendered involuntary by a failure to advise defendant of his right to refuse a request to search without a search warrant. *United States v. Shields,* 573 F.2d 18 (10th Cir. 1978); *United States v. Agapito,* 620 F.2d 324 (2nd Cir.1980); *People v. Tremblay,* 77 A.D.2d 807, 430 N.Y.S.2d 757 (1980). In the present case defendants were advised of their Miranda rights and their right to refuse to give their consent to a search of their vehicle absent a search warrant. The trial court did not find that defendants' consent was given under coercive circumstances. The right to search an automobile is different from and broader than the right to search premises of a building, home or office. *State v. Laughter,* 128 Ariz. 264, 625 P.2d 327 (App.1980) (defendant's consent to search car upheld despite fact officers handcuffed defendant and placed him under arrest).

To test the validity of a consent to search, the trial court must judge it against the totality of all the circumstances and the pivotal question is was the consent essentially a voluntary, free and unconstrained choice or was it the result of duress, coercion, implicit, or threat, express or implied, or of covert force. *Schneckloth v. Bustamonte; State v. Ruud.* The voluntary nature of a consent is a question of fact and not of law. *United States v. Tolias,* 548 F.2d 277 (9th Cir.1977); *United States v. Watson.*

Courts in other jurisdictions have consistently held that evidence obtained following the granting of a consent to search is not to be automatically suppressed as "fruit of the poisonous tree," but have instead stated that the evidence is to be suppressed only if the consent was gained by exploitation of illegal conduct or that defendant's free will was overcome so that the consent was not voluntary. *State v. Kennedy,* 290 Or. 493, 624 P.2d 99 (1981). *See also* 2 W. LaFave, *Search and Seizure,* § 8.1 at 611 (1978).

I would reverse the trial court's order of suppression and remand the cause to the trial court for a determination of the issues presented in the motion to suppress under the totality of the circumstances test set forth in *Schneckloth v. Bustamonte* and *State v. Ruud.*