806 P.2d 588

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Miguel BEDOLLA,
Defendant–Appellant.**

No. 11949.

Court of Appeals
of New Mexico.

Jan. 3, 1991.

Certiorari Denied Feb. 14, 1991.

Hal Stratton, Atty. Gen., Margaret B. Alcock, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Ramon I. Garcia, Roswell, for defendant-appellant.

## OPINION

ALARID, Chief Judge.

Defendant appeals his conviction for possession with intent to distribute cocaine. Defendant claims (1) the stop of his vehicle was constitutionally impermissible; (2) his subsequent consent was not voluntary and was an exploitation of the prior impermissible stop and detention; and (3) the drug evidence must be suppressed as fruit of the poisonous tree. We reverse because the search that led to the cocaine was the product of an illegal stop and because defendant's consent to search his motel room was tainted by the illegal stop.

## FACTS

Police officers received an anonymous Crimestoppers' tip that a man named Frank and another man, who had a purple Nissan pickup truck with California plates, were dealing cocaine out of a room at the Navajo Motel. The officers went to the Navajo Motel, and, after more than an hour, a purple Nissan drove up, and three Spanish males exited the vehicle and went into a room at the motel. After some time, four people came out of the motel and got into two vehicles, the purple Nissan and a blue Nissan with California plates. Both vehicles drove away from the motel. During this time, the officers did not notice anyone arrive in cars, briefly visit the room, and then leave. Apparently the blue vehicle had been at the motel during the whole surveillance time. Both vehicles departed the motel around dinner time.

The officers followed the purple pickup and stopped it about a quarter of a mile from the motel. The vehicle was not stopped for any traffic violation, and there were no signs of any criminal activity that the officer observed either taking place in the truck or having taken place at the motel. The only reason the truck was stopped was because of the Crimestoppers' tip. The officer wanted to confirm or dispel the information given by the informant. The officer called for assistance before making the stop, so at the time of the stop four officers were present.

Officer Lara was the main person confronting defendant at this time. He conversed with defendant on four topics at the time of the stop: (1) identification; (2) consent; (3) possible deals; and (4) defendant's wife and children, who were present. We understand from the testimony that the officer first asked for identification, then told defendant he was investigating the tip.

Officer Lara asked defendant to consent to a search of the motel room. Defendant asked whether a warrant was needed. The officer said a warrant was needed. The officer also told defendant, "I believed, based on the information and corroboration at this point, I believe I had maybe enough probable cause to get a warrant."

After Officer Lara asked if defendant would consent to the search of his room, defendant said there were drugs in his room, and, if the police would just let him go back to California, he would not come back to Roswell. Officer Lara's impression of this was that defendant was trying to elicit some sort of bargain from him. Officer Lara responded that he could not say anything until he determined the amount of drugs in the room.

Officer Lara could not remember whether he or defendant brought up the subject of defendant's family. Another officer said defendant brought it up. When the officer told defendant what he was investigating, defendant began to get nervous and looked in the direction of his wife and children. The officer told defendant that if drugs were found in the room, his wife would not be charged and defendant's children could stay with his wife.

The officers and defendant went back to the motel. Defendant was given his *Miranda* rights. A consent to search form was filled out. Defendant read it and

signed it before the room was searched. Defendant's wife was never charged and the children were never taken away from her.

## DISCUSSION

Defendant argues that the stop of his truck was unlawful and that both his subsequent consent and the drug evidence must be suppressed as fruit of the poisonous tree. The state contends that due to defendant's subsequent consent, the legality of the stop is not at issue because "New Mexico follows the rule that a voluntary consent can validate what might otherwise be an illegal search and seizure." The state cites and quotes dicta from *State v. Cohen*, 103 N.M. 558, 563, 711 P.2d 3, 8 (1985), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986), and cites *State v. Hadley*, 108 N.M. 255, 771 P.2d 188 (Ct.App.1989), and *State v. Ruud*, 90 N.M. 647, 567 P.2d 496 (Ct.App.1977). We address both whether the stop was legal and whether a voluntary consent alone always purges the taint of prior police illegalities.[1] We conclude the stop was illegal, and under New Mexico law and the applicable United States Supreme Court rulings, it tainted the search. *See State v. Cohen; State v. Gilbert*, 98 N.M. 530, 650 P.2d 814 (1982); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

### 1. The Validity of the Stop

■ The trial court, relying on *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), found the initial stop and detention valid. We disagree. *Terry* was a limited decision permitting brief investigative detentions where the police officer "is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing ... in an attempt to discover weapons which might be used to assault him." 392 U.S. at 30, 88 S.Ct. at 1884. In *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the court stated the purpose of the limited weapons search "is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." 407 U.S. at 146, 92 S.Ct. at 1923.

Moreover, in order to justify a *Terry*-type stop in New Mexico, our cases require much more in the way of articulable facts than the officers had in this case. *See State v. Barton*, 92 N.M. 118, 584 P.2d 165 (Ct.App.1978) (significant corroboration through police investigative work of informant's tip justified investigatory stop); *State v. Galvan*, 90 N.M. 129, 560 P.2d 550 (Ct.App.1977) (inarticulate hunch insufficient to meet reasonable suspicion standard); *State v. Hall*, 90 N.M. 554, 566 P.2d 103 (Ct.App.1977) (stop valid because circumstances and events were all consistent with officer's experience with cars hauling marijuana).

*Barton* presented facts similar in critical detail to this case. An anonymous informer related significant details about four people at a motel possessing heroin, and about to leave for Oklahoma. The informant provided names, vehicle type and description, the room number, and the type and quantity of drug. The police went to the motel and investigated. They found the suspects had checked out and departed. They found evidence in the room consistent

---

1. 3 W. LaFave, *Search and Seizure* § 8.2(d) (2d ed. 1987) points out that, when called upon to determine the admissibility of physical evidence obtained after a purported consent search which was preceded by a prior police illegality, the issues may be examined under the policies of both the fourth and fifth amendments. In some cases, the question is whether the consent was voluntary under a fifth amendment "totality of the circumstances" voluntariness test. In others, as in the case before us, it is whether the alleged consent is an exploitation of the prior illegality and is therefore inadmissible under a fruit of the poisonous tree taint analysis. LaFave notes that, while there is an overlap to the voluntariness and taint test, and often a proper result may be reached by using either one independently, it is important to note that the two tests are not identical. The fruit of the poisonous tree doctrine may invalidate a search following a consent which is considered voluntary under the fifth amendment.

with heroin use and possession. This court said,

> At this point, the sheriff and Deputy West had three items of information: 1) information from motel personnel, 2) information from the search of the motel rooms, and 3) informer's information which had been verified. These items were sufficient to warrant the officers, as men of reasonable caution, to believe that an offense had been or was being committed.

92 N.M. at 120, 584 P.2d at 167.

*Barton* illustrates the type of follow-up investigation our cases require where police are relying on an informer's tip to sufficiently justify a subsequent stop. The facts of *Barton* are readily distinguishable from the facts before us. In this case, the officers were present at the motel for over an hour before seeing a vehicle matching that described by informant. Yet, they did not attempt to corroborate any of the tip's information by speaking with the motel personnel until after the search. Despite the hour-long surveillance of room 125, and following defendant's truck for approximately one-quarter mile, their investigative work yielded nothing consistent with criminal behavior and corroborated nothing more of the tip than that the purple Nissan vehicle existed, that it had California tags, and that it was driven by an unidentified person. The arresting officer testified that the vehicle was stopped solely to investigate the tip.

Our recent case of *State v. Therrien*, 110 N.M. 261, 794 P.2d 735 (Ct.App.1990), contains applicable language. In *Therrien*, we reversed a conviction for marijuana possession because the affidavit used to secure the search warrant was insufficient. The insufficiency related to the veracity prong of the *Aguilar–Spinelli* (*Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), *overruled in part, Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)) test. This court said,

> The only confirmation of the caller's information in this case (aside from the statement of the confidential informant, which we have already held cannot be credited) related to descriptions of the premises to be searched and of two vehicles parked on the property. The corroborated information was in no sense incriminatory. Also, it was so readily available to any member of the public that the caller's accuracy in this regard was not probative of his accuracy regarding covert criminal activity at the location.
>
> . . . .
>
> The function of anonymous tips, however, is to direct police investigative activities, not to substitute for them.

*State v. Therrien*, 110 N.M. at 264, 794 P.2d at 738.

In the case before us, the corroborated portions of the tip were readily available to any member of the public. The limited information contained in the tip was substituted for investigative work as in *Therrien*. There was none of the investigative follow-up of the tip as appeared in *Barton*. In short, the information available to the arresting officer at the time he pulled defendant over did not meet the threshold requirements for an investigatory stop as established by our cases and was constitutionally impermissible.

Even if we were persuaded that our cases did not require a finding that the stop was invalid, we would still be compelled to so conclude on the rationale set forth in the recent U.S. Supreme Court case, *Alabama v. White*, — U.S. —, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The issue in *White* was whether an anonymous tip may furnish reasonable suspicion for a stop. The court suggested that an anonymous tip, standing alone, could not furnish the requisite reasonable suspicion. It held that an anonymous tip, sufficiently corroborated, could form the basis for reasonable suspicion, although it expressly recognized that drawing a bright line on the facts of the case before it was a difficult and close call. *Id.*, 110 S.Ct. at 2417.

Comparison of the facts of *White* with the facts of this case compels the conclusion that this case is not so close and falls

on the dark side of the line in *White*. In *White*, the caller said that a woman would be leaving a certain apartment at a particular time in a particularly described car, and that she would be carrying cocaine in a brown attache case and going to a certain motel. Officers went to the apartment and located the car. A woman came from the building in which the apartment was located and got into the car. She drove four miles in the most direct route to the motel. Although the officers did not see the brown attache case, they stopped her car shortly before it reached the motel.

The court distinguished between those tips so completely lacking in indicia of reliability that they would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized, and those tips that either contained indicia of reliability within them or are sufficiently corroborated. In *White*, there was nothing in the tip itself to indicate reliability. However, the independent corroboration by the police officer of "significant aspects of the informer's predictions imparted some degree of reliability." 110 S.Ct. at 2417. Thus, although the brown attache case was not corroborated, the place the woman was coming from, her destination, the time of departure, and her car were. The court placed special importance on the caller's ability to predict future behavior. *Id.*

There is no similar corroboration in this case. The tip alleged two men were dealing cocaine from a room in the Navajo Motel and they were driving a particular truck. The only elements of the tip the police corroborated were that the truck arrived at the motel shortly before dinner time, containing three people, and about fifteen minutes to a half hour later departed, containing two adults, while two other adults left in another truck. Contrary to *White*, where details and accurate predictions constituted reasonable suspicion justifying the stop, there was no reasonable suspicion in this case.

The inescapable conclusion to be drawn from the record is that the officers, lacking reasonable suspicion for a *Terry*-type stop and lacking probable cause to search the vehicle or the motel room, seized, detained and transported Bedolla back to his motel in the hope of developing probable cause or obtaining a consent to search. Accordingly, in illegally stopping and detaining Bedolla and then informing him that a search warrant could "probably" be obtained, and returning him back to the motel without reasonable suspicion or probable cause to believe a crime had been or was being committed, the officers exceeded the limits of a lawful stop and violated defendant's fourth amendment rights.

In so holding, we distinguish *Taxation & Revenue Dep't v. Van Ruiten*, 107 N.M. 536, 760 P.2d 1302 (Ct.App.1988), upon which the state relies. In *Van Ruiten*, police received an anonymous phone call stating that the citizen-informer had observed a man who was very intoxicated in a 7–11 store. The informer said the man left the store, described the vehicle the man was driving, and stated the direction in which he was headed. The police officer spotted the vehicle, observed its speed, which was within the limit, stopped the vehicle, and, after the driver failed field sobriety tests, arrested the driver for driving while intoxicated. Stating that eyewitnesses or victims of crime are presumed reliable, the court found that the officer had a reasonable basis for stopping the driver in order to investigate. *Id.* at 538, 539, 760 P.2d at 1304, 1305; *see also State v. Hernandez*, 111 N.M. 226, 804 P.2d 417 (Ct.App.1990); *State v. Therrien*, 110 N.M. at 264, 794 P.2d at 738 (refusing to assume the veracity of an anonymous Crimestoppers caller); *State v. Michael G.*, 106 N.M. 644, 748 P.2d 17 (Ct.App.1987) (eyewitness informants are subject to much less stringent credibility requirements than ordinary police informants because citizens presumably have nothing to gain by fabrication). In contrast to this case, where the informant was a Crimestopper, the caller in *Van Ruiten* was an eyewitness to the crime who predicted the intoxicated driver's behavior. *See State v. Therrien.* In the case before us, the officer stopped the truck in order to obtain a consent to search it. In contrast, the *Van Ruiten* officer confirmed

the eyewitness's tip that the driver was headed south on a certain highway within fifteen minutes and stopped the driver in order to dispel the officer's suspicions. Thus, in *Van Ruiten,* the police had reasonable suspicion to stop the vehicle, whereas in this case, the police did not have reasonable suspicion to stop the vehicle.

### 2. Whether the Illegal Stop Tainted the Consent to Search

■ Defendant argues all that followed the illegal stop of his vehicle was tainted by the initial illegality, including his purported voluntary consent. The state contends that due to defendant's subsequent consent, the causal connection between the illegal stop and the product of the search, the cocaine, is not at issue because "New Mexico follows the rule that a voluntary consent can validate what might otherwise be an illegal search and seizure." The state cites and quotes dicta from *Cohen,* and cites *Hadley* and *Ruud.*

*Cohen* contains the quoted statement, and our cases, *Hadley* and *State v. Zelinske,* 108 N.M. 784, 779 P.2d 971 (Ct.App. 1989), appear to follow the language literally. However, we believe all the quoted language means is that a valid consent may obviate the need for the ordinarily required warrant and probable cause.[2] *See State v. Bolton,* 111 N.M. 28, at 41, 801 P.2d 98 at 111 (Ct.App.1990). Under the facts of the case before us, the quoted language means that if sufficient attenuation exists between the illegal stop and detention, and the consent to search, the search may be valid despite the prior illegal acts of the law enforcement officials. *See State v. Gilbert; Florida v. Royer; Dunaway v.*

*New York; Brown v. Illinois; Wong Sun v. United States.* We therefore address, where the initial stop of a vehicle is unlawful, whether a subsequent alleged voluntary consent to search necessarily removes all taint of the prior illegality and bars challenge to the admissibility of evidence so obtained.

We do not believe *Cohen* can be read as restrictively as the state urges and find it not dispositive of defendant's claims in this case for at least three reasons. First, to read *Cohen* as the state urges would require this court dismiss the intentional use of the qualifying word "can" in the quoted language and adopt a rigid reading of our law that is contrary to applicable U.S. Supreme Court decisions. *See Florida v. Royer; Dunaway v. New York; Brown v. Illinois; Wong Sun v. United States.* We decline this offer. Second, in discussing two relevant Tenth Circuit cases, *Cohen* notes that the proper question in evaluating whether a consent was tainted by prior illegality is whether there was "[sufficient] attenuation between the *illegal detention* and the consent to search." 103 N.M. at 564, 711 P.2d at 9 (emphasis added), discussing *United States v. Recalde,* 761 F.2d 1448 (10th Cir.1985), and *United States v. Gonzalez,* 763 F.2d 1127 (10th Cir.1985); *see State v. Greene,* 91 N.M. 207, 572 P.2d 935 (1977) (adopting logic of *Wong Sun;* courts must be willing to bar physical fruits of inadmissible statements); *State v. Deutsch,* 103 N.M. 752, 713 P.2d 1008 (Ct. App.1985) (recognizing *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), taint test as controlling authority), *cert. denied,* 476 U.S. 1183, 106 S.Ct.

---

**2.** Our reading of *Cohen* is supported by *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). *Schneckloth* is the underlying authority for *Ruud* and *Cohen. Schneckloth,* relying on *Davis v. United States,* 328 U.S. 582, 593–94, 66 S.Ct. 1256, 1261–1262, 90 L.Ed. 1453 (1946), states that a consent search is one of the established exceptions to both the warrant and probable cause search requirements. The *Schneckloth* court held that when the subject of a search is not in custody and the prosecution alleges a consent search occurred, the fourth and fourteenth amendments require that it demonstrate the consent

was in fact voluntary; voluntariness is to be determined from the totality of the surrounding circumstances. While knowledge of a right to refuse consent is a factor to be taken into account, the prosecution need not prove the one giving permission to search knew he had a right to withhold his consent. 412 U.S. at 249, 93 S.Ct. at 2059. In both *Cohen* and *Schneckloth,* the stop preceding the search was found to be legal. Thus, neither case squarely addresses the issue presented in the case before us, where defendant has alleged his consent was the fruit of the prior illegal stop and detention.

2918, 91 L.Ed.2d 547 (1986). Since the stop and detention were found legal in *Cohen,* the court did not reach the attenuation question squarely presented here. Finally, contrary to the state's claims as to the principle it says *Cohen* announced, we observe the *Cohen* court did not apply it to the facts of that case. Therefore, we narrowly view the scope of the dicta's applicability.

Additionally, in *Gilbert,* our supreme court followed the United States Supreme Court analysis that controls our review of the attenuation issue here. *State v. Gilbert,* 98 N.M. at 532, 650 P.2d at 816; *see Dunaway v. New York; Brown v. Illinois; Wong Sun v. United States.* In *Gilbert,* the defendant alleged a constitutionally impermissible detention was exploited to obtain a confession. As in *Cohen,* the detention was found to be legal; thus, there could be no taint. 98 N.M. at 533, 650 P.2d at 817. The *Gilbert* court said,

> In *Wong Sun,* the test of whether a confession should be suppressed was said to depend upon whether evidence was obtained by exploitation of an illegality or was sufficiently attenuated to be purged of the primary taint of illegality....
>
> ....
>
> [T]he Court in *Brown* set forth a test for determining whether there is a causal connection between illegal detention and the resultant confession. The Court said that voluntariness and the Fifth Amendment considerations involved in *Miranda* warnings were but a threshold question for Fourth Amendment purposes.

98 N.M. at 532, 650 P.2d at 816.

The express adoption of *Wong Sun* and *Brown* weighs heavily in favor of our reading of *Cohen.* We must read *Cohen* in light of all our supreme court cases addressing taint analysis. *See Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973). Moreover, "New Mexico decisions, as long as they are not violative of minimum federal constitutional standards, are controlling." *State v. Ruud,* 90 N.M. at 649–50, 567 P.2d at 498–99. Thus, *Cohen* must be read consistently not only with *Gilbert* but

the applicable United States Supreme Court decisions as well.

The United States Supreme Court has consistently barred the admission of legally obtained evidence derived from past police illegalities under the so-called "fruit of the poisonous tree" doctrine. *See Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 391–92, 40 S.Ct. 182, 182–183, 64 L.Ed. 319 (1920); 24 A.L.R. 1426 (1923); *Nardone v. United States,* 308 U.S. at 341, 60 S.Ct. at 267; *Florida v. Royer; Dunaway v. New York; Brown v. Illinois; Wong Sun v. United States.* The Court has specifically applied the doctrine where the challenged evidence was obtained after an illegal arrest or detention. *See Florida v. Royer,* 460 U.S. at 507–08, 103 S.Ct. at 1329; *Dunaway v. New York,* 442 U.S. at 216–17, 99 S.Ct. at 2258–2259; *Davis v. Mississippi,* 394 U.S. 721, 724, 89 S.Ct. 1394, 1396, 22 L.Ed.2d 676 (1969). There is, however, no per se rule prohibiting use of such evidence, and a defendant's consent may, under limited circumstances where attenuation is also shown, remove the taint of an illegal detention. *Dunaway v. New York,* 442 U.S. at 216–17, 99 S.Ct. at 2258–2259; *Brown v. Illinois,* 422 U.S. at 603, 95 S.Ct. at 2261; *State v. Cohen,* 103 N.M. at 563, 711 P.2d at 8; *see also United States v. Troutman,* 590 F.2d 604, 606 (5th Cir. 1979).

In *Wong Sun,* the Court recognized the fourth amendment exclusionary rule applies to statements obtained following an illegal arrest just as it does to tangible evidence seized in a similar manner or obtained pursuant to an otherwise illegal search and seizure. 371 U.S. at 484–85, 83 S.Ct. at 415–416.

In *Brown,* the Supreme Court considered whether a confession could be the fruit of an unconstitutional seizure. 422 U.S. at 591, 95 S.Ct. at 2255–56. The Court rejected the per se rule that the giving of *Miranda* warnings breaks the causal chain between the confession and the prior illegality, and found the voluntary inculpatory statements inadmissible. *Id.* at 601–02, 95 S.Ct. at 2260–61. Relying on *Wong Sun,* the *Brown* Court said,

In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be "sufficiently an act of free will to purge the primary taint." 371 U.S., at 486, [83 S.Ct. at 416]. *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment.

*Brown v. Illinois*, 422 U.S. at 602, 95 S.Ct. at 2261.

*Brown* clarified the two separate analyses required under *Wong Sun:* a fifth amendment totality of the circumstances voluntariness analysis, and a fourth amendment taint, or fruit of the poisonous tree analysis. According to the *Brown* Court,

> The temporal proximity of the arrest and the confession, the presence of intervening circumstances, (citations omitted) and, particularly, the purpose and flagrancy of the official misconduct are all relevant.

*Id.* at 603–04, 95 S.Ct. at 2261–62 (footnotes omitted).

The relevant factors must all be considered in determining the relationship between acquisition of the evidence and the prior misconduct. Thus, *Brown* teaches that a voluntary act, such as a consent, may pass fifth amendment scrutiny but is insufficient, standing alone, to remove the taint of a prior fourth amendment violation. Instead, consent is but one factor in the calculus required to evaluate the relationship between official misconduct and acquisition of evidence. *Id.* at 602–04, 95 S.Ct. at 2261–62; *accord State v. Gilbert.* Here the state urges us to read *Cohen* as having adopted a rigid rule of the sort expressly rejected in *Brown.* The state argues that a consent which is voluntary, standing alone, assures that a search is not an exploitation of a prior illegality. The logic relied upon by the *Brown* Court to reject a blanket rule that "Mirandizing" a defendant automatically purges the taint of prior illegal conduct is persuasive here as well.

If *Miranda* warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. *See Davis v. Mississippi*, 394 U.S. 721, 726–727 [89 S.Ct. 1394, 1397, 22 L.Ed.2d 676] (1969). Arrests made without warrant or without probable cause, for questioning or "investigation," would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving *Miranda* warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a "cureall," and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to "a form of words." *See Mapp v. Ohio*, 367 U.S. [643,] 648 [81 S.Ct. 1684, 1687, 6 L.Ed.2d 1081] (1961).

*Brown v. Illinois*, 422 U.S. at 602–03, 95 S.Ct. at 2261 (footnote omitted).

With the stop determined illegal, the state's heavy reliance on the signed consent form places it squarely within the substantive and policy contours of the *Brown* ruling.

Since voluntariness is but one element of a fourth amendment taint analysis, it is clear from the above discussion that an illegal stop can, under certain circumstances, taint a subsequent search regardless of the voluntariness of the consent. *Wong Sun v. United States; Brown v. Illinois; Dunaway v. New York; Florida v. Royer;* 3 W. LaFave, *Search and Seizure* § 8.2(d) (2d ed. 1987).

Under the above authorities, we read *Cohen* to require us to consider both whether a voluntary consent to search obtained after an illegal stop is an exploitation of the prior illegality *and* whether the prior illegality affects the voluntariness of consent. To the extent anything we said in *Hadley* and *Zelinske* can be read to the contrary, they are expressly overruled.

Additionally, we choose not to follow *United States v. Carson*, 793 F.2d 1141

(10th Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986), a case relied upon by the state, which squarely states, at several places in the opinion, that a voluntary consent will necessarily purge the taint of any prior illegality. *But see State v. Arroyo,* 796 P.2d 684 (Utah 1990) (declined to follow *Carson* as contrary to applicable U.S. Supreme Court rulings). *Carson* places dispositive weight on the validity of the subsequent consent and ignores the competing interests shaping the exclusionary rules and its exceptions. *See* Note, *Illegally Acquired Information, Consent Searches, and Tainted Fruit,* 87 Colum.L.Rev. 842, 848–52 (1987).

Even assuming that defendant eventually voluntarily signed a consent to search form, and accepting the well-established rule that "a search authorized by consent is wholly valid," *Schneckloth v. Bustamonte,* 412 U.S. at 222, 93 S.Ct. at 2045 (citing *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970) and *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)): *State v. Cohen,* 103 N.M. at 563, 711 P.2d at 8, we believe the state cannot establish sufficient attenuation between its illegal acts and the consent to search to remove the product of the search, the cocaine, out of the category of fruit of the initial illegality. Moreover, the illegality here, as in *Brown,* "had a quality of purposefulness." 422 U.S. at 605, 95 S.Ct. at 2262. The arresting officer acknowledged in his testimony that there were no signs of criminal activity and the only purpose for the stop was to investigate the tip. " 'The arrest, both in design and in execution, was investigatory. The [officers] embarked upon this expedition for evidence in the hope that something might turn up.' *Brown,* 422 U.S. at 605, 95 S.Ct. at 2262." *United States v. Recalde,* 761 F.2d at 1459.

Therefore, we hold that, under the United States Supreme Court precedents discussed above, the consent to search and the evidence derived therefrom was not purged of the taint of the unlawful stop and the trial court should have granted defendant's motion to suppress the cocaine.

The testimony was that the officer made the stop to confirm or dispel the Crimestoppers' tip, asked defendant for identification, told him they were investigating the tip, and then asked for consent to search his motel room. These facts appear strikingly similar to *Royer,* where the officers detained the defendant for the purpose of obtaining his consent to search. Moreover, under the *Brown* factors, we are compelled to reverse as well; the temporal proximity between the primary illegality and the request for consent was immediate, there were no intervening factors, and the purpose of the illegal stop was to further investigate the uncorroborated tip.

3. Voluntariness of Consent

■ Having found defendant's consent to search to be an exploitation of the prior illegal detention under a fourth amendment analysis, and dispositive to the merits of the case, we need not reach the issue of whether his consent was voluntary under the fifth amendment totality of the circumstances analysis. However, we do note that when attempting to prove voluntary consent following an illegal stop, the prosecution has a much heavier burden to satisfy than when proving consent to search after a legitimate initial stop. *United States v. Melendez–Gonzalez,* 727 F.2d 407 (5th Cir.1984); *United States v. Ballard,* 573 F.2d 913 (5th Cir.1978). In addition to proving valid and voluntary consent to search, the prosecution must also establish the existence of intervening factors which prove that the consent was sufficiently attenuated from the illegal stop. *See Dunaway v. New York,* 442 U.S. at 217–18, 99 S.Ct. at 2259; *Brown v. Illinois,* 422 U.S. at 602–05, 95 S.Ct. at 2261–62; *Wong Sun v. United States,* 371 U.S. at 486, 83 S.Ct. at 416. An alleged voluntary act must be " 'sufficiently an act of free will to purge the primary taint' " of the illegal detention. *Brown v. Illinois,* 422 U.S. at 602, 95 S.Ct. at 2261 (quoting *Wong Sun v. United States,* 371 U.S. at 486, 83 S.Ct. at 416).

CONCLUSION

Accordingly, we vacate the judgment and sentence of the conviction, reverse the denial of the motion to suppress, and remand for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

BIVINS and CHAVEZ, JJ., concur.