2001-NMCA-049

30 P.3d 383

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Simon HALPERN, Defendant–Appellant.**

**No. 20,910.**

Court of Appeals of New Mexico.

June 21, 2001.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Lisa N. Cassidy, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## *OPINION*

ROBINSON, Judge.

{1} In this case, the door to Defendant's condominium was slightly ajar, and the police could smell burning marijuana. They knocked on the door and walked right in without giving the occupants an opportunity to answer the door. Once inside, the police seized evidence they believed was stolen. Defendant was charged with receiving stolen property and filed a motion to suppress evidence. The trial court denied Defendant's motion to suppress, and Defendant entered a conditional guilty plea to retaining stolen property, reserving the right to appeal the suppression issue. We hold that the police officers failed to knock and announce, as required by Article II, Section 10 of the New Mexico Constitution, and *State v. Attaway*, 117 N.M. 141, 149–53, 870 P.2d 103, 111–15 (1994), and reverse.

## FACTS

{2} The police had an arrest warrant for Kevin Running. They went to Defendant's condominium. Running did not live there, but they went there because they had seen Running's vehicle there "from time to time." Running's vehicle was not there, but the police went to the door anyway. A deck walkway leads to the doors of the various condominiums. The door was cracked about "four to six inches," and officers could smell marijuana. They did not have a search warrant. There is no evidence that, as the police stood on the deck walkway outside the condo, the people inside the condominium knew they were there.

{3} The police made the decision to enter the condominium. Officer Jerry Walker, the only police witness at the suppression hearing, testified that, as he was entering the condominium, he knocked on the door and announced they were looking for Kevin Running. Officer Walker testified that when he knocked on the door, "it swung partially open some more. And at that point, I could— that's when I saw an individual run into the back bedroom." He caught a "glimpse of the back of his head" and thought it "could have been Kevin Running." On questioning by the prosecutor, Officer Walker testified that he made this observation as he was entering the condominium:

Q. What did you do then?

A. I knocked on the door and announced that we were looking for Kevin Running. At that time, one individual who was inside the condo went to the back bedroom. And all I caught was a glimpse of the back of his head and I believed it could have been Kevin Running.

Q. Were you inside or outside of the condo at that time?

A. I was entering the condo at that time.

{4} On cross-examination, Officer Walker reiterated that he did not see the person going to the back bedroom until he had pushed open the door and was entering. On redirect examination, he testified that the police had made the decision to enter as soon as they got to the door:

Q. Whether you were invited in by any of the occupants or not, were you gonna enter that apartment as soon as you basically got to its threshold?

A. Yes, ma'am.

Q. Why?

A. Because I could smell marijuana.

{5} The testimony of one of the teenage boys in the condominium was consistent with that of Officer Walker. The teenager testified that "I think [the police] gave a little knock, but they didn't wait for anybody to answer. They just walked right in."

{6} When the police entered, Defendant was not inside. Kevin Running was not in the condominium, either. Three of Defendant's friends, all teenagers, were drinking and smoking marijuana, and the police spent at least an hour and a half searching the condo. They discovered some property that had been stolen, including a highway sign. Defendant returned home to find the police and was charged with receiving stolen property.

{7} Defendant moved to suppress the allegedly stolen property, arguing that there were no exigent circumstances to justify the warrantless entry, and that the police failed to knock and announce. The court denied the motion. The court found that the offi-

cers knocked and the door opened more, and that they noticed someone they believed could have been Kevin Running retreating to a back room. The court concluded that the individuals in Defendant's condominium gave up their expectation of privacy by leaving the door open, that the smell of burning marijuana gave officers probable cause to believe a crime was being committed, and that the observation of a person going to the back of the condominium constituted exigent circumstances. The court did not make any findings, or enter any conclusions, concerning Defendant's argument that the police failed to knock to comply with knock and announce requirements.

**STANDARD OF REVIEW**

{8} We review a trial court's ruling on a motion to suppress to determine whether the law was correctly applied to the facts, giving due deference to the factual findings of the trial court. *State v. Duquette*, 2000–NMCA–006, ¶ 7, 128 N.M. 530, 994 P.2d 776.

**THE KNOCK AND ANNOUNCE RULE**

{9} The requirement that police knock and announce their presence before entering is rooted in the New Mexico Constitution. *Attaway*, 117 N.M. at 151, 870 P.2d at 113. *Attaway* holds that "if an officer attempts to execute a search warrant without complying with the announcement rule and exigent circumstances are not present, the entry is unreasonable and the officer commits an 'unwarranted governmental intrusion' in violation of the accused's Article II, Section 10 rights." *Attaway*, 117 N.M. at 150, 870 P.2d at 112. The requirement mandates that the police "wait a reasonable time" after knocking before they are allowed to enter. *State v. Vargas*, 1996–NMCA–016, ¶¶ 2–10, 121 N.M. 316, 910 P.2d 950. The knock and announce requirement applies to the execution of arrest warrants, as well. *Id.* (applying knock and announce rule to the execution of arrest warrants). When the police have not complied with the knock and announce requirement, the State bears the burden of proving justification for noncompliance. *Id.* ¶ 6. Failure to comply with the knock and announce rule can result in suppression of evidence seized in the unreasonable search. *Id.* ¶ 5.

{10} Here, the officers did not wait a "reasonable time," after their announcement, before entering the condominium. *Vargas* ¶ 5. Officer Walker believed he could knock, announce, and enter without waiting because he smelled marijuana. The record reflects that knocking, announcing, and entry were virtually simultaneous. There is no evidence that the police knocked and gave the occupants a reasonable time to answer the door. On this record, simultaneous knocking, announcing, and entering does not comply with the requirements of *Attaway*. *See also, State v. Rogers*, 116 N.M. 217, 220, 861 P.2d 258, 261 (Ct.App.1993) (announcement of authority simultaneous with entry does not satisfy the requirement of prior notice and announcement of purpose).

{11} The district court did not make a finding of exigent circumstances sufficient to excuse the knock-and-announce requirement based on the potential destruction of evidence. (R.P. 45) *See Attaway*, 117 N.M. at 151 n. 7, 870 P.2d at 113 n. 7 (noting that possible destruction of evidence might "create sufficient exigency to justify noncompliance with the rule of announcement"); *Vargas*, ¶ 5 (exigent circumstances exist if there is a "demonstrable risk that evidence will be destroyed while the officers wait to be denied entry"). We agree with the district court. The odor of burning marijuana might suggest that evidence is being destroyed, but the amount that would be destroyed while the police gave the occupants the opportunity to answer the door is extremely minimal.

{12} *Vargas* also holds that danger to police can provide exigent circumstances that will justify noncompliance with the knock and announce requirement. *Id.* There is no evidence that the officers were in sufficient danger that they could legitimately dispense with the requirement that they allow the occupants a reasonable time to answer the door.

{13} Nor do we find that exigent circumstances were created by the fact that the officers saw someone going to the back of the condominium. The record reflects that Officer Walker saw the person moving to the

back of the condominium only after he had pushed open the door and was entering the residence. The police gained this view as a result of their illegal entry, and cannot rely on it to justify their failure to knock and announce. *See Wong Sun v. United States,* 371 U.S. 471, 484–91, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (fruit of the poisonous tree is inadmissible); *State v. Bedolla,* 111 N.M. 448, 453–56, 806 P.2d 588, 593–96 (Ct.App. 1991) (illegally obtained evidence must be suppressed). Although the district court did find this constituted exigent circumstances to enter without a warrant, we disagree as a matter of law because the police were able to see the person moving to the back of the condominium only by virtue of their illegal entry.

{14} The district court denied the motion to suppress, in part, because it concluded that the occupants of the condominium waived their right to privacy by leaving the door cracked four to six inches. We disagree. The protections of the Fourth Amendment and Article II, Section 10 place a priority on protection of the home, and draw "a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The sanctity of the home is not abandoned simply by leaving a door cracked. *Cf. State v. Diaz,* 1996–NMCA–104, ¶¶ 5, 15–20, 122 N.M. 384, 925 P.2d 4 (where bedroom had no door, but only a blanket hung over the door, the room's occupant still had a legitimate expectation of privacy and third party could not consent to a search of the bedroom); *see also, Sabbath v. United States,* 391 U.S. 585, 590, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) (police failure to follow federal requirements that police identify themselves and state their purpose before forcibly entering was not excused by the fact that the door was unlocked so the use of force was unnecessary); *State v. Campana,* 112 Ohio App.3d 297, 678 N.E.2d 626, 630 (1996) (even if the door was partially ajar, the police still had a duty to knock and announce, and could not knock and, when the door opened a little more just walk right in); *City of Athens v. Wolf,* 38 Ohio St.2d 237, 313 N.E.2d 405, 408 (1974) (police could not walk through an open door into Defendant's dormitory room); *State v. Sims,* 240 Ga.App. 391, 523 S.E.2d 619, 622 (1999) ("A garage or basement door left open to admit light and air does not constitute a blanket invitation to the police to enter …"); *State v. Dyreson,* 104 Wash.App. 703, 17 P.3d 668, 672–73 (2001) (police could not make a warrantless entry into an open garage).

## CONCLUSION

{15} We reverse the trial court's denial of Defendant's motion to suppress evidence, vacate defendant's plea, and remand to the trial court for further proceedings consistent with this opinion.

{16} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and MICHAEL D. BUSTAMANTE, Judge.