IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.                                                             NO. 27,472

KEVIN AKERS,

Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY
James Waylon Counts, District Judge

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Vicki W. Zelle, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**FRY, Chief Judge.**

Defendant Kevin Akers pleaded no contest to possession of a controlled substance and possession of drug paraphernalia, reserving the right to appeal the district court's denial of his motion to suppress evidence. On appeal, Defendant argues that the police officer improperly expanded the scope of the traffic stop to

include an unjustified pat down for weapons and an investigation into other illegal activity. We hold that while the initial traffic stop was valid, the officer's additional questions were not within the scope of reasonable suspicion, and Defendant's consent to search his vehicle did not purge the taint of the officer's illegal questions. We reverse Defendant's convictions and remand to the district court to vacate the judgment and deferred sentence.

**BACKGROUND**

Officer Mark Esquero was patrolling the streets of Alamogordo on September 21, 2005, when he observed a four-door Mercury Sable traveling around a residential area. Officer Esquero did not make contact at that moment because he had to respond to another call. About twenty minutes later he observed what he thought was the same vehicle in another area of town. He did not identify the license plate number but noticed that the license plate light was not illuminated. He could not make contact concerning the traffic violation because he again had to respond to another call. At approximately 11:55 pm, Officer Esquero observed the same vehicle about three blocks ahead of him in another area of town and accelerated to catch up with it. Officer Esquero turned on his emergency lights to stop the vehicle to inquire about the license plate light violation and what the vehicle was doing driving around town. The

vehicle traveled about two blocks before coming to a complete stop. The delay in stopping raised red flags because in Officer Esquero's experience drivers usually pull over immediately at that time of night in a residential neighborhood with no traffic.

Upon approaching the driver's side door and making contact, Officer Esquero learned that the driver was Defendant. Officer Esquero explained that he stopped the vehicle because the license plate light was out and also explained that he had observed the same vehicle traveling in different areas of town. The officer asked Defendant for his driver's license, registration, and insurance. Defendant provided his driver's license but had a difficult time finding his registration and insurance. The officer asked if the vehicle belonged to Defendant. Defendant initially said it did not but several seconds later provided proof that the vehicle was registered in his name. Defendant did not have proof of insurance. Officer Esquero did not smell marijuana or any other illegal substance and did not see any identifiable stolen property or narcotics in the vehicle.

Officer Esquero asked Defendant if he was going anywhere specific. Defendant stated he was going to a friend's house, but did not say who the friend was. When Officer Esquero asked Defendant where his friend lived, Defendant said somewhere in the area and that he was trying to find the house. Defendant appeared extremely

nervous to Officer Esquero because he was sweating profusely, fumbling around for paperwork, making incomplete statements, and trying to avoid the officer's questions. However, Defendant was reasonably courteous and cooperative and did not threaten the officer. The officer testified that it was not unusual for people to fumble around for paperwork and that there was nothing threatening about making incomplete statements.

Officer Esquero testified, however, that because Defendant had not pulled over quickly, he was concerned for his safety at that point and asked Defendant to exit the vehicle. Defendant complied. Officer Esquero conducted a pat down search for weapons and found a buck knife, which the officer acknowledged is not an illegal weapon.

After the pat down, Officer Esquero told Defendant that he was going to issue citations for the inoperable license plate light and no proof of insurance. Defendant appeared nervous. Officer Esquero explained that residential and auto burglaries had been occurring. He then asked Defendant if he was or had been participating in those type of activities. Defendant said no, that he was just going to a friend's house. At that point, the officer asked Defendant if there were any illegal items in the vehicle

and asked for consent to search the vehicle for any illegal items such as stolen property, weapons, or narcotics. Defendant granted consent.

Officer Esquero testified that when he told Defendant he was writing the traffic citations, he had completed the investigation of the light violation but did not tell Defendant that he was free to leave. The officer acknowledged that he had no indiction of any specific illegal activity, but testified that he had reasonable suspicion to continue the investigation based on Defendant's driving around in residential areas and his delay in pulling over for the traffic stop.

Before searching the vehicle, Officer Esquero waited for another officer to arrive at the scene while Defendant stood behind his vehicle. During the search, Officer Esquero looked in an open bag of candy on the passenger seat and found a small glass pipe and a vial of a substance that field-tested positive for methamphetamine.

At the suppression hearing, the State argued that Officer Esquero had probable cause to stop Defendant's vehicle for the light violation and then developed reasonable suspicion to expand the scope of the stop based on Officer Esquero's knowledge of past burglaries in the area, Defendant's aimless driving in residential neighborhoods, Defendant's delay in stopping his vehicle, and Defendant's behavior

5

on contact. The State argued that the stop progressed incrementally from a valid traffic stop into asking for consent to search.

Defendant argued that Officer Esquero acted on an inarticulate hunch, not reasonable suspicion, and used the traffic stop as a fishing expedition. Defendant argued that Officer Esquero found nothing in the course of the investigation to give rise to reasonable suspicion that Defendant was involved in burglary or any other illegal activity. Defendant argued that Officer Esquero impermissibly expanded the scope of the stop by asking questions about other illegal activity and asking for consent to search the vehicle and that all evidence and statements seized as a result of the unreasonable expansion of the scope of the stop should be suppressed.

In denying the motion to suppress, the district court concluded that Officer Esquero was within the permissible scope of the stop when he sought consent to search. The court ruled that Officer Esquero could expand the scope of the stop beyond the traffic violations based on Defendant's apparently aimless driving, his failure to stop immediately, his inordinate degree of nervousness, and his temporary denial of ownership of the vehicle. Defendant appeals from that ruling.

**STANDARD OF REVIEW**

In reviewing the district court's denial of a motion to suppress, we determine "whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). We defer to the district court's findings of fact to the extent that they are supported by substantial evidence. *Id.* However, we "review the application of the law to these facts, including determinations of reasonable suspicion, under a de novo standard of review." *State v. Patterson*, 2006-NMCA-037, ¶ 13, 139 N.M. 322, 131 P.3d 1286.

**DISCUSSION**

Defendant contends that Officer Esquero was not justified in expanding the scope of the traffic stop for a license plate light violation into conducting a pat-down for weapons, inquiring about Defendant's possible involvement in burglaries, or requesting permission to search his vehicle for any illegal items. The State contends that the officer had an objectively reasonable suspicion that justified expanding the scope of the stop and requesting consent to search.

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. U.S. Const. amend. IV. "Under Fourth

Amendment standards, when a law enforcement officer makes a lawful stop, the officer may conduct an investigation reasonably related to the circumstances that gave rise to the officer's reasons for the stop." *State v. Williamson*, 2000-NMCA-068, ¶ 8, 129 N.M. 387, 9 P.3d 70. "Contemporaneous or continued investigation beyond the scope of the initial traffic stop is justified only if the officer can articulate specific and particularized factors that give rise to an objectively reasonable suspicion that other criminal activity has been or may be afoot." *State v. Prince*, 2004-NMCA-127, ¶ 9, 136 N.M. 521, 101 P.3d 332.

"Reasonable suspicion is measured by the totality of the circumstances." *Id.* ¶ 10. We first determine what facts were available to the officer and what inferences logically flowed from those facts. *Id.* Next, we objectively determine whether these facts would prompt a reasonable person to conclude that criminal activity was afoot. *Id.* In determining whether an officer had reasonable suspicion of other criminal activity, we must necessarily take into account the evolving circumstances with which the officer was faced. *State v. Funderburg*, 2008-NMSC-026, ¶ 16, 144 N.M. 37, 183 P.3d 922. "An officer's continued detention of a suspect may be reasonable if the detention represents a graduated response to the evolving circumstances of the situation." *Id.* However, "[u]nsupported intuition and inarticulate hunches are not

sufficient." *State v. Vandenberg*, 2003-NMSC-030, ¶ 21, 134 N.M. 566, 81 P.3d 19 (internal quotation marks and citation omitted).

**The Initial Traffic Stop Was Valid Based on the License Plate Violation But Officer Esquero Needed Reasonable Suspicion to Conduct an Independent Investigation into Other Criminal Activity**

The parties do not dispute that Officer Esquero's observation of the inoperable license plate light provided a sufficient basis for stopping the vehicle and requesting license, registration, and proof of insurance. *See State v. Reynolds*, 119 N.M. 383, 388, 890 P.2d 1315, 1320 (1995) (holding that after a valid investigatory stop, an officer is entitled to verify that the driver is licensed and driving a car that is registered and insured). The difficulty arises in this case as to whether Officer Esquero had a reasonable and articulable suspicion that other criminal activity was afoot and thus a valid basis for expanding the scope of inquiry or continuing the detention beyond the issuance of the traffic violations.

Defendant argues that from the moment Officer Esquero pulled his vehicle over, the officer engaged in a fishing expedition, expanding the scope of the traffic stop by inquiring about Defendant's travel plans, ordering Defendant out of the vehicle for a protective search, asking Defendant if he was involved in any burglaries, and then asking for consent to search for narcotics, weapons, or stolen goods. The

9

State contends that during the course of the traffic stop Officer Esquero developed reasonable suspicion that Defendant was involved in illegal activity which justified expanding the scope of the stop to ask what Defendant was doing driving around town, to conduct the frisk for reasons of officer safety, and finally to inquire about burglary and whether Defendant had any illegal items in his vehicle.

As this Court has recognized, "[o]fficers may not use a lawful stop to fish for evidence of other crimes where there is insufficient reason to detain a defendant beyond the purpose of the initial detention." *Prince*, 2004-NMCA-127, ¶ 19. Officer Esquero testified that he stopped Defendant's vehicle for two reasons:  to investigate the inoperable license plate light and to inquire about Defendant's apparently aimless driving.  Only one of those reasons sufficed as a valid reason for a traffic stop. *See id.* (noting that even though a defendant was lawfully detained for a speeding violation, an independent investigation into drugs required additional reasonable suspicion to be lawful).  Officer Esquero testified that he thought Defendant's aimless driving around residential neighborhoods was suspicious and that he knew that there had been residential and auto burglaries in Alamogordo, but offered no additional, particularized information that would link Defendant to those crimes.  At best, Officer

10

Esquero had only an inchoate suspicion or general hunch at the outset that other criminal activity may have been afoot.

During the course of the traffic stop, Officer Esquero's suspicions were aroused by Defendant's delay in stopping the vehicle, his extreme nervousness, and his temporary denial of ownership of the vehicle. Accordingly, we are inclined to think that Officer Esquero could inquire about where Defendant was going as long as the questions were limited and not intrusive. *See State v. Duran*, 2005-NMSC-034, ¶¶ 36-37, 138 N.M. 414, 120 P.3d 836 (stating that an officer may lawfully ask "minimally intrusive questions to confirm or dispel his initial suspicion" arising from the traffic stop as long as the questions are reasonable and "intrude on a person's liberty as little as possible under the circumstances").

**Officer Esquero Exceeded the Scope of a Routine Traffic Stop By Conducting a Weapons Frisk**

While asking the questions, however, Officer Esquero testified that he became concerned about his safety and asked Defendant to step out of the vehicle for a weapons pat-down. Defendant contends that Officer Esquero was not justified in conducting a frisk in the interest of officer safety.

The State asserts that this issue was not preserved. We disagree. Although Defendant argued below that the officer impermissibly expanded the scope of the

11

investigation regardless of the frisk, Defendant also argued that the pat down did not meet the requirements of *Vandenberg* and *State v. Chapman*, 1999-NMCA-106, 127 N.M. 721, 986 P.2d 1122. Defendant also objected to the frisk in his written suppression motion. The State in turn argued that the frisk was justified because a weapon was found. Although the district court did not expressly address the frisk in its oral ruling, the court implicitly found the frisk was proper by ruling that the officer did not exceed the scope of the stop. We therefore address the legality of the frisk.

Ordinarily, "an officer may not constitutionally perform a protective frisk for weapons during a traffic stop." *Vandenberg*, 2003-NMSC-030, ¶ 32. "To justify a frisk for weapons, an officer must have a sufficient degree of articulable suspicion that the person being frisked is both armed *and* presently dangerous." *Id.* ¶ 22. When an officer is investigating an inherently dangerous crime such as burglary, the nature of the crime may be a sufficient predicate under the totality of the circumstances to consider a suspect armed and dangerous and subject to a protective frisk for weapons. *Id.*

Here, Officer Esquero did not have reasonable suspicion at the time of the traffic stop that Defendant was committing or was about to commit burglary. Thus, Officer Esquero did not have a sufficient predicate based on a burglary investigation

to consider Defendant armed and dangerous. Therefore, the relevant inquiry is whether the officer developed a reasonable belief during the course of the stop that Defendant might be armed and dangerous. *See id.* ¶ 24.

The State acknowledges that nervousness alone is not enough to justify a search for weapons, *see id.* ¶ 31, but argues that Defendant was extremely nervous such that the traffic stop ceased to be routine. The State contends that Defendant was driving without an apparent destination in residential neighborhoods at night when the officer knew of residential burglaries taking place in town, did not stop immediately, did not provide insurance, was perspiring profusely, and avoided questions. Under these circumstances, the State argues, a reasonably prudent officer would be warranted in believing that his safety was in danger.

While we agree with the State that the officer may have perceived Defendant's behavior as suspicious, we are not persuaded that the behavior justified a reasonable belief that Defendant was armed and dangerous. *See id.* ¶ 19 (observing that deciding whether an officer's actions were objectively reasonable extends beyond fact-finding). Officer Esquero testified that he became concerned for his safety because, after Defendant took two blocks to pull over, Defendant was sweating profusely, fumbling around for paperwork, and making incomplete statements about his travel plans.

13

However, Officer Esquero also testified that Defendant was cooperative, courteous, and did not threaten him. Although he testified that Defendant was more nervous than most people who are pulled over during a traffic stop, Officer Esquero did not articulate specific reasons why Defendant's nervousness caused him to believe his safety would be compromised. *Cf. id.* ¶ 25 (noting that a frisk was proper when instead of just describing a defendant as nervous the officer identified specific behaviors and changes in demeanor that caused the officer to become concerned for his safety). In *Vandenberg*, for example, the Court noted that the defendant exhibited increasing nervousness and potentially unpredictable and sometimes evasive and hostile behavior. *Id.* ¶ 30.

Moreover, Officer Esquero did not proceed incrementally before frisking Defendant as the officer did in *Chapman. Id.* ¶ 26. In *Chapman*, the officer stopped a defendant for not wearing a seat belt. *See* 1999-NMCA-106, ¶¶ 17-18. When the defendant did not make eye contact, had shaking hands, and was unusually nervous, the officer first asked the defendant if he had any weapons. *Id.* When the defendant responded with a high-pitched voice in an anxious, aggressive, and hostile manner, the officer asked the defendant to exit the vehicle, upon which Defendant's hands and body began shaking uncontrollably. *Id.* Based on those concrete examples of

14

nervousness and hostility, this Court concluded that the officer reasonably believed the defendant might be armed and dangerous. *Id.* In contrast, the facts of this case lack the sort of incremental proceeding and escalating nervousness and hostility that have led our courts to uphold a protective frisk in the course of a routine traffic stop.

On the facts before us, and in light of Officer Esquero's failure to proceed incrementally, we are not persuaded that the circumstances justified a search for weapons in the interest of officer safety. However, even if we assume that the frisk was justified by a concern for officer safety that arose during the circumstances of the traffic stop, we would still find that the frisk informs our analysis of whether the officer exceeded the scope of the traffic stop by his subsequent inquiries.

**The Officer Exceeded the Scope of the Traffic Stop by Inquiring About Other Criminal Activity That Was Not Supported by Reasonable Suspicion**

The core issue at this point of the traffic stop is whether Officer Esquero had specific and particularized information to constitute reasonable suspicion that Defendant was involved in a burglary or that any illegal items would be found in his vehicle that would justify prolonging the detention beyond the time necessary to issue the traffic citations. Our inquiry is guided by the admonition that an officer's investigation of any reasonable suspicion must proceed diligently. *See Williamson*, 2000-NMCA-068, ¶ 8.

15

Regardless of its legality, the pat down only yielded a buck knife. Officer Esquero did not testify that the discovery of the knife caused any additional suspicion by linking Defendant to any particular crime or by creating a fear that additional weapons would be found in Defendant's vehicle. Officer Esquero testified that when he told Defendant that he was going to issue the two traffic citations, the officer had completed his investigation of the light violation but did not tell Defendant he was free to leave. Officer Esquero testified that he had "reasonable suspicion to make sure there was nothing else that was about to be committed or was committed." At that point, the officer asked Defendant if he was involved in residential or auto burglaries that had been occurring. After Defendant said no, Officer Esquero expanded his inquiry into whether Defendant had any illegal items such as stolen property, weapons, or narcotics in the vehicle and asked for consent to search.

"An officer's continued detention of an individual, while lawful at the outset, may become unlawful if the officer unjustifiably expands the scope of the detention or, without a valid factual basis, makes inquiries about other criminal activity unrelated to the traffic violation." *Funderburg*, 2008-NMSC-026, ¶ 14. While the purpose of an investigative stop can be expanded by specific, articulable facts that cause an officer to reasonably suspect criminal activity, *see Prince*, 2004-NMCA-127,

16

¶ 11, specific, articulable facts do not exist here. Officer Esquero's testimony indicated that he became suspicious when he saw Defendant's vehicle driving around because there had been a series of burglaries in the area. However, Officer Esquero did not turn up any specific, articulable facts during the course of the traffic stop that would cause him to expand the scope of the investigation to burglary. Officer Esquero testified that the vehicle took its time stopping and that Defendant was nervous and perspiring, could not produce insurance, falsely claimed that the vehicle was not his, and did not make complete statements. We fail to see how these factors would lead a reasonable person to believe that Defendant was involved in burglary.

In addition, nothing in the investigation reasonably raised the officer's suspicion of any other criminal activity. *See State v. Taylor*, 1999-NMCA-022, ¶ 22, 126 N.M. 569, 973 P.2d 246 (observing that "the subjects of drugs and alcohol could have come within the scope of the officers' investigation if evidence of drugs and alcohol had become apparent during their interactions with [the d]efendant"). Rather than pointing to specific, articulable facts, Officer Esquero had no more than a generalized hunch that Defendant was involved in other criminal activity. *See Prince*, 2004-NMCA-127, ¶ 17 ("[W]hat is missing from this mix are crucial details and

17

particularized information regarding the alleged criminal activity that was occurring.").

Viewed objectively, nothing in the investigation reasonably raised the officer's suspicion of any criminal activity other than the license plate light and insurance violations, and the officer observed no conduct tending to indicate that Defendant was in possession of stolen property, drugs, or weapons. *Cf. Duran*, 2005-NMSC-034, ¶ 38 (concluding that an officer had reasonable suspicion to expand the scope of a traffic stop to inquire about drugs when the defendant's car was stopped on a known drug route and the officer observed items usually found in the trunk on the backseat, the vehicle smelled of gasoline, the vehicle's paperwork was suspicious, and the driver was extremely nervous and offered conflicting accounts of her travel plans). We hold that Officer Esquero's questions about additional criminal activity, which amounted to a fishing expedition from which Defendant was not free to leave, expanded the intrusiveness of the stop and consequently were not permissible.

**Officer Esquero's Impermissible Questions Were Not Sufficiently Attenuated From Defendant's Consent to Purge the Taint of Illegality**

The State argues that the search was valid based on Defendant's voluntary consent. However, or evidence obtained in a consensual search to be admissible under a Fourth Amendment challenge, the consent must not only be voluntary but purged

18

of all taint. *State v. Bedolla*, 111 N.M. 448, 455, 806 P.2d 588, 595 (Ct. App. 1991). An illegal stop taints any subsequent consent to search unless the prosecution proves that the consent was sufficiently attenuated from the illegal conduct that precedes it. *Id.* at 456, 806 P.2d at 596. In deciding whether the consent is sufficiently attenuated from the Fourth Amendment violation, we consider the temporal proximity of the illegal act and the consent, the presence or absence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *Id.*

Here, we conclude that there was no attenuation. Officer Esquero did not have reasonable suspicion to detain Defendant pursuant to a burglary investigation, and he therefore asked improper questions while detaining Defendant for a traffic violation and immediately before asking for consent to search. No other events occurred to separate the questions and the consent. *See Taylor*, 1999-NMCA-022, ¶ 29. Moreover, the purpose of requesting consent to search was not only to verify Defendant's answers to the improper questions but to further expand the scope of an investigation into additional areas of criminal activity. *See id.* Thus, as in *Taylor*, the very purpose of seeking consent was to continue an investigation that was beyond the scope of the officer's reasonable suspicion. *Id.* We therefore hold that the consent was not sufficiently attenuated from the illegality to remove its taint.

19

**CONCLUSION**

For the foregoing reasons, we reverse Defendant's convictions and remand to the district court to vacate the judgment and sentence.

**IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**